UNION FREE SCHOOL DISTRICT NO. 3, TOWN OF RYE, WESTCHESTER COUNTY, Respondent, *v.* TOWN OF RYE, Appellant.

Argued April 5, 1939; decided June 2, 1939.

*John L. Coward* for appellant. The Constitution of the State of New York bars the defendant from borrowing money for the purpose of raising the necessary funds to pay over to the plaintiff the uncollected taxes. (N. Y. Const. art. 8, § 1.)

*William A. Davidson* for respondent. The town, in borrowing money to pay to the school districts the amount of the unpaid school tax, is not loaning its credit in violation of section 1 of article 8 of the Constitution. (*Capes* v. *Burgess*, 135 Ill. 61; *Richard* v. *American Union Bank*, 123 Misc. Rep. 92; *Imperial Curtain Co.* v. *Strauss*, 76 Misc. Rep. 533.) The provisions of the new Constitution do not controvert the provisions of the Westchester County Tax Law (L. 1916, ch. 105, as amd.) so as to make unconstitutional section 31 of the Tax Law, which has been in effect for upwards of twenty years. (*City of New York* v. *Davenport*, 92 N. Y. 604; *Matter of Oswego County* v. *Foster*, 262 N. Y. 439; *Town of Amherst* v. *County of Erie*, 260 N. Y. 361.) The school district is a governmental agency of the State and, therefore, the raising of its school moneys is for a governmental and town purpose. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437; *Herman* v. *Board of Education*, 234 N. Y. 196; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377.)

LEHMAN, J. The Westchester county tax law (Laws of 1916, ch. 105, with subsequent amendments) is intended

" to provide for the assessment of property and the collection of taxes and assessments in the several towns of Westchester county, and in the special tax and school districts in such towns." In many respects the system devised for Westchester county is different from the system used in other counties. In other counties the tax machinery of the county is used to supplement the machinery of local units in levying and collecting taxes for local purposes. In Westchester county assessment rolls are prepared in each town by a *single town board of assessors* " for the purpose of taxation within their respective towns, whether for state, county, town, special tax district or school district purpose or purposes." (§ 7.) After the amount of a tax to be raised within the town or special tax district for any or all of such purposes has been fixed according to law and the amount certified to the supervisor of the town, the *town* is charged with the duty of extending, collecting and paying over to the proper officers of the county and school districts the amount of the tax so certified.

The tax law provides that " The amount of the annual tax and special assessments of each school district shall be fixed and determined, as the law provides, by the trustees or board of education of each school district, and shall be certified to the supervisor of the town before June first in each year." (§ 16.) Upon receiving such certification the supervisor is under a duty to " extend " the tax and deliver to the receiver of taxes his warrant for the collection of the tax. (§ 17.) The receiver of taxes must deposit to the credit of the town all amounts collected and file on the first day of each month with the supervisor of the town a report showing the amount of state, county, town, school district, and special district taxes collected and received by him. He must " on the fifteenth day of September of each year file with the county treasurer of Westchester county a report showing the amount of State and county taxes and assessments uncollected by him since the first day of January, April and/or May as the case may be last preceding." (§ 23.) He must upon written demand of the board of education of a

school district file in addition a report which " shall show the total amount of taxes and assessments of such school district uncollected by him during the current fiscal year." (§ 28.)

The supervisor of the town must " on or before the fifth secular day of each month pay to the treasurer of Westchester county, the state and county tax or assessments so collected and deposited by said receiver and to the treasurer of each school district in said town the amount of school tax of said district so collected and deposited by said receiver." (§ 24.) Whenever after the fifteenth day of September the supervisor of the town " shall receive from the receiver of taxes, an account of unpaid state, county, town, town district, or special assessments, and after the first day of February in each year an account of unpaid school taxes, he shall, under the direction and authority of the town board or a majority of them, borrow upon the credit of the town a sum not exceeding the amount of the unpaid taxes so reported. * * * From the proceeds of such bonds or certificates of indebtedness, the supervisor shall pay to the county treasurer the amount of unpaid state and county taxes included in such report; and shall pay to the treasurer of each school district the amount of unpaid school taxes of such district included in such report." (§ 31.) State, county, town, special district or school taxes collected thereafter belong to the town. (§ 24.)

The plaintiff is a school district within the village and town of Rye in Westchester county. The amount of the school tax to be raised by assessment of the tax upon property within the school district was fixed at $205,289.58 and the amount so fixed was certified to the supervisor of the town of Rye in June, 1938. The supervisor extended the tax and issued his warrant to the receiver of taxes. On the 1st day of February, 1939, $189,362.42 had been collected by the receiver of taxes and a balance of $15,927.16 remained due and owing. The plaintiff made a demand upon the supervisor of the town of Rye for the payment of such balance. The supervisor has refused to make such payment, claiming that he has not on hand sufficient money and that under

the provisions of the Constitution of the State he may not borrow money for that purpose. There is no contention that the statute does not *in terms* place upon the town the duty to pay to the school district the uncollected balance of the school tax. When the statute was adoped, the Constitution of the State provided that " no county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation  *  *  *  nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes." (Art. VIII, § 10.)  So long as the Constitution so provided, the validity of the statutory command that the town should pay to the school district uncollected taxes and the authority conferred by statute upon the town to borrow the required money was never challenged on the ground that a loan contracted by the town for such purpose would constitute a loan of its credit to a corporation in violation of that constitutional provision.  The refusal of the town to borrow money and to pay it to the school district is based upon the contention that provisions of the statute have been rendered invalid by *change* in the Constitution which became effective on January 1, 1939.  The controversy has been submitted to the Appellate Division upon an agreed statement of the facts.

The Constitution in present form provides: " No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or *private* corporation or association, or *private* undertaking  *  *  * nor shall any county, city, town, village or school district give or loan its credit to or in aid of any individual, or *public or private* corporation or association, or private undertaking, *but this provision shall not prevent a county from contracting indebtedness for the purpose of advancing to a town or school district, pursuant to law, the amount of unpaid taxes returned to it.*" (Italics of course are ours.)  (Art. VIII, § 1.)  " No county, city, town, village or school district shall contract any indebtedness except for county, city,

town, village or school district purposes, respectively."
(Art. VIII, § 2.)

There is here a clear distinction in the scope of the
restriction, placed by the Constitution upon a unit of local
government in the administration of its finances, between
a gift or loan of the *money* or *property* of such a unit and a
gift or loan of its *credit*. Public moneys should be used for
public purposes; therefore, gifts or loans of public money
or property may not be made to an individual or *private*
corporation or association or private undertaking, but there
is no prohibition against gifts of moneys to a *public* corpora-
tion for a public purpose, at least where the local unit does
not borrow the money so given or loaned. Unwise use of
local public moneys even for a public purpose may cause
hardship to the taxpayer but correction of error there is
left by the Constitution to the people whose money is
used and who select the local officials. The entire machinery
of local government may, however, break down if the credit
of the units of local government required to carry out their
governmental functions is impaired, and there may be
danger of such impairment if a local unit is permitted to
give or loan its credit or to borrow money in aid of under-
takings outside of its own field. To safeguard that credit
the Constitution permits the use of its credit by a local
unit only for the purposes of that unit, and prohibits it
from giving or loaning its *credit* to or in aid of any " *public
or private* corporation." ·

We are told that a school district is not a " public
corporation " within the meaning of the constitutional
restriction; that the restriction in present form, like the
restriction contained in the Constitution in effect when the
statute was enacted, does not apply to the gift or loan of
credit to or in aid of a governmental agency or municipal
corporation, but was intended to apply only to corporations
which are " public " in the limited sense that railroad,
steamboat, telephone, telegraph and similar corporations
are public corporations. The constitutional provision may
not be so read. The reports of the Committees on State

Finances and Revenues; Cities; Counties and Towns; and Villages, introducing this amendment in the Constitutional Convention show beyond possible question that the Convention intended that the restriction should apply to every corporation, public or private, including a governmental agency, like a school district. Without regard to such reports, however, it appears from the language of the section itself that any narrower construction would thwart the plain intention of the Legislature. " Public " corporations within the meaning of the constitutional provision include " municipal corporations."

The question remains, however, whether in this case the town by borrowing money to pay to the school district the uncollected school tax is giving or lending its credit to or in aid of the school district. As we pointed out at the beginning of this opinion, under the provisions of the Westchester tax law, the town is charged with the duty of levying, collecting and *paying over* to the treasurer of the school district the amount of the school tax previously certified to the supervisor. It must pay that amount in full even though it fails to collect the tax in full. The uncollected taxes then belong to the town. So long as the town pays over to the school district the full amount of the tax which was levied, whether the payment is made by the town out of moneys in the treasury of the town or out of moneys borrowed for that purpose by the town and whether or not the town subsequently succeeds in collecting the unpaid taxes, are matters which in no wise affect the school district. The statute is intended to place upon the town an unconditional obligation to pay the amount of the tax to the school district and the school district is under no obligation to repay the town, and, in final analysis, the question is whether borrowing money by the *town* to meet such an unconditional obligation of the *town* constitutes a gift or loan of the credit of the town " to or in aid of " the school district.

Counties, towns and school districts are all " municipal corporations " or governmental subdivisions of the State.

We have said in *Village of Kenmore* v. *County of Erie* (252 N. Y. 437, 442), that the Legislature in the exercise of its power and the performance of its duty to "arrange the territory of the state into civil divisions and to so apportion among them governmental duties" may use the county and its officers for the performance of such governmental functions or duties as it sees fit. "School districts are, like counties, governmental subdivisions of the state, though their governmental function is confined to education. The state uses the machinery of county government to supplement the machinery of the school districts where the latter proves inefficient in the collection of school taxes (Education Law, §§ 434, 439; Cons. Laws, ch. 16)." "A town is a municipal corporation comprising the inhabitants within its boundaries, and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as have been, or, may be conferred or imposed upon it by law." (Town Law; Cons. Laws, ch. 62, § 2.) There is similar definition of a county in the County Law (Cons. Laws, ch. 11), section 3. In the Education Law the Legislature provided for the use of the machinery of the county to supplement the machinery of the school district in the collection of school taxes. In the Westchester tax law the Legislature has gone further. It has apportioned to the towns the full duty of assessing, levying and collecting taxes within its boundaries "whether for state, county, town, special tax district or school district purpose or purposes," and of paying to the State, county or district the amount of such taxes. The Legislature might apportion that duty to the town as it might apportion that duty to the county. It might place upon the town or county the duty of paying each governmental unit the tax levied to meet the governmental expenses of that unit, placing upon the tax-collecting unit the risk that it might not be able to collect the full amount. (*Mayor* v. *Davenport*, 92 N. Y. 604; *Town of Amherst* v. *County of Erie*, 260 N. Y. 361.)

The town does not question that under the new Constitution, as under the old, the Legislature has the power

to place that risk and duty upon the town and to command the town to use for such purpose the money *in its treasury.* It contends only that the Legislature may not command or authorize it to use its credit to *borrow* money to be paid to the school district in performance of the function or duty imposed upon the town. That, it says, constitutes an indirect gift or loan of its credit to or in aid of the school district, prohibited by the Constitution. The town does not question that since education is a governmental function the Legislature might, if it chose, apportion the function of education to town or county instead of school district (Cf. *Village of Kenmore* v. *County of Erie, supra; Town of Amherst* v. *County of Erie, supra*) ; nor does the town question that if the Legislature had provided that schools within the town should be maintained and conducted by the town there would be no prohibition in the Constitution against borrowing by the town to pay the school expenses. It argues, however, that what would be permitted to the town if the statute had placed upon the town the duty of *maintaining* the schools is forbidden by the new Constitution when the town's function is confined to raising or supplying the moneys required for that purpose and the function of administering the moneys supplied is apportioned to another unit.

The task of the Constitutional Convention was to restate the fundamental law of the State so that adequate governmental powers might be vested in appropriate governmental agencies and to subject those powers to such restrictions as wisdom, gained by experience, might dictate. The problem was to be viewed in relation to existing institutions and established policies and to conditions either now existing or which might be anticipated. In the interpretation of the Constitution formulated by the Convention as its solution of the problem the same matters must be given due weight for the words of the Constitution should be read as they naturally would be read and understood by persons who know the conditions now existing which might be affected by changes in the fundamental law.

The representatives of the People in convention assembled, doubtless viewed with concern the possibility that, if a

local unit, unable to raise by taxation or by use of its credit all the moneys it desired to expend for its local governmental purposes, were permitted to rush to another local unit with better credit or to the State and to induce the loan of sound credit to bolster up its own failing credit, the entire financial structure of the State might be weakened. To safeguard the public credit against such a threat, section 1 of article VIII was formulated for the protection of the finance of local units, and similar provision made in article VII to protect the finances of the State. In the original form it contained no saving clause. The declared intention of draftsmen of these provisions, manifested in notes appended to their proposals, was to prevent, perhaps with exceptions thereafter to be inserted, the use of the credit of one unit to supplement the credit of another unit. Only in the saving clause thereafter added can suggestion be found that provision devised for so sound a purpose might without that clause be construed in manner which would disrupt our system of taxation under which the risk of failure to collect all taxes for governmental purposes may be placed upon a single governmental unit.

The saving clause was not contained in the report of the Committees on State Finances and Revenues; Cities; Counties and Towns; and Villages, which drafted and introduced the article on " Local Finances " of which this provision is the first section, but, it appears from the proceedings of the Convention, the saving clause was thereafter proposed by a delegate on the floor of the Convention. Whether its introduction and adoption was due to excess of caution or because some of those responsible for its drafting believed that without the saving clause the tax system prevailing generally throughout the State would be destroyed, does not appear from the records of the Convention and is not, perhaps, of serious consequence now. Certainly not all those who originally joined in presenting section 1, article VIII, thought that a saving clause would be necessary to preserve the system previously in effect; for one of them, in reply to a request for a statement indicating that the

provisions of section 1 did not "prohibit the continuance of the present system" stated that "I have been asked two or three questions which I would like to answer for the purpose of the record. One is whether the provisions of Section 1 preclude a county from advancing the amount of school taxes returned as uncollected by the school districts, either from funds on hand or money borrowed for that purpose. The answer to that is no, the provisions of the first paragraph do not prohibit the continuance of the present system. The second question is, do the provisions of this section adversely affect the present system of collecting taxes in towns primarily referring to the *Amherst* decision, and the answer is likewise no." (Record of the Convention, pp. 2520 and 2521.) To that statement there was no dissent from the floor of the convention.

Even so, the adoption of the saving clause thereafter shows, at least, that some of the members of the Convention believed that the proposed provision of the Constitution might otherwise be construed differently. Perhaps where one local unit is required to borrow money for the purpose of " *advancing* " the amount of taxes imposed by another governmental unit argument might be made that indirectly such borrowing is a loan of credit by the local unit making the " advances " in aid of the unit which received the advances. That would be so at least where the unit making the " advances " was entitled to claim reimbursement from the unit receiving them. In counties other than Westchester the towns and the school districts have, as already pointed out, power to levy and collect their own taxes though ultimate duty to pay to towns or school districts, taxes which they fail to collect, rests upon the counties. Perhaps in such case payment by the counties might be regarded as an " advance," and without the saving clause there might be question whether the established system might be continued. In Westchester, as we have pointed out, the town is the sole unit which may levy or collect any taxes. It does not, in any sense, " advance " to the county or to the school districts " the amount of unpaid taxes returned to it." It pays over the amount which it collects up

to a fixed date upon taxes which it levies and after that date it pays the uncollected balance and receives in return title to the taxes. We cannot reasonably read into the constitutional provision an intent to prohibit the continuance of such a system because a saving clause has been added intended to preserve a similar taxing system in effect in the other fifty-six counties of the State outside of New York city, especially where argument, not completely devoid of force, might be made that without such saving clause the prohibition would apply to these fifty-six counties even though it might not apply to Westchester county.

If the Legislature in the exercise of its discretion chooses to make the town in Westchester county the sole taxing unit responsible for the ultimate payment to school districts and to county of school and county taxes, it would be unreasonable, in the absence of clearest language, to apply to the system in effect in Westchester county a prohibition specifically made inapplicable to the other fifty-six counties, though no claim is made that the danger against which the constitutional provision is intended to protect is more inherent or imminent in the Westchester system than in the system used in the other counties.

Within its defined limits the constitutional restriction must be rigidly enforced according to its letter and its spirit. Every obligation of a governmental unit must rest upon its own credit and no governmental unit may give or loan its credit except for the purpose of meeting its own obligations incurred in the performance of a governmental function or duty which the State may entrust to it. The constitutional provision here invoked does not restrict the legislative power to apportion governmental duties. The Legislature may now, as formerly, apportion to the trustees or board of education of school districts, the duty to administer the schools within the districts and apportion to the town the duty to supply the moneys required by such trustees or board. The Legislature has done so by its command to the town to levy and collect a tax for such purpose and to pay over to the treasurer of the school district the tax so collected and, in addition, the amount

not collected at a fixed date. To meet its own obligations in aid of a governmental duty and only to meet such obligations the town may borrow money where necessary. That is not a loan or gift of its credit to the school district in anticipation of reimbursement either directly by the school district or by the collection of taxes which belonged to the school district, for the school district never owned the taxes — they belong to the town — and the school district was never directed or authorized to raise the moneys by taxation or by use of its credit.

The judgment should be affirmed, without costs.

CRANE, Ch. J., HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgment affirmed.