BERNARD COMERESKI, Appellant, v. CITY OF ELMIRA et al., Respondents.

Argued January 3, 1955; decided February 24, 1955.

*Donald H. Monroe* for appellant. I. The agreement is a contract to guarantee bondholders, and is not authorized or permitted by the provisions of the Elmira Parking Authority Act. II. The agreement is prohibited by and is in violation of the Elmira Parking Authority Act. III. The agreement is illegal because it contemplates and requires that meters be maintained on the streets of the city, not merely as a means of regulating traffic but for the purpose of raising revenue. (*People* v. *Littman,* 193 Misc. 40; *Laubach & Sons* v. *City of Easton,* 347 Pa. 542.) IV. The agreement is illegal and void

because it is an illegal surrender of its governmental function and power. (*Schwab* v. *Graves*, 221 App. Div. 357; *Belden* v. *City of Niagara Falls*, 230 App. Div. 601; *Board of Commissions of City of Newark* v. *Local Govt.*, 133 N. J. L. 513.) V. The provisions of the purported agreement are in violation of section 1 of article VIII of the New York Constitution. (*Union Free School Dist.* v. *Town of Rye*, 280 N. Y. 469; *Altschul* v. *Ludwig*, 216 N. Y. 459.) VI. The act of the city in the enactment of Local Law No. 5 of 1949 conveys no further power or authority on the Elmira Parking Authority than is provided by the Elmira Parking Authority Act.

*Harry Moseson* for City of Elmira Parking Authority, respondent. I. The contract does not violate section 1 of article VIII of the New York Constitution. (*Denihan Enterprises* v. *O'Dwyer*, 302 N. Y. 451; *Union Free School Dist.* v. *Town of Rye*, 280 N. Y. 469; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Hesse* v. *Rath*, 249 N. Y. 436; *Bush Term. Co.* v. *City of New York*, 282 N. Y. 306; *Salzman* v. *Impellitteri*, 305 N. Y. 414; *Davidson* v. *City of Elmira*, 180 Misc. 1052, 267 App. Div. 797, 292 N. Y. 723.) II. The contract does not violate the provisions of the Elmira Parking Authority Act. III. The contract was not in violation of the provisions of the city charter. IV. The contract does not involve the City of Elmira in a surrender of any of its governmental functions and powers. (*People* v. *Littman*, 193 Misc. 40.) V. The complaint does not set forth any allegation of actual or potential waste or injury to the City of Elmira. (*Western N. Y. Water Co.* v. *City of Buffalo*, 242 N. Y. 202; *Altschul* v. *Ludwig*, 216 N. Y. 459.)

DESMOND, J. Plaintiff, as a taxpayer in the city of Elmira, sues for a judgment which would declare invalid a contract between the city and the Elmira Parking Authority, the latter being a public benefit corporation organized, in 1948, pursuant to a special act which is title 9 of article 7 of the Public Authorities Law. The general purpose of the authority, whose members are appointed by the Mayor of Elmira, is to acquire and use real and personal property for indoor and outdoor automobile parking " projects " in that city. The city of Elmira, itself, has, under section 72-j of the General Municipal Law, and section 54 of the Vehicle and Traffic Law, power to set up

and operate parking lots and garages, and parking meters in its streets. However, in Elmira it was decided, for reasons not explained in the record and not important for our purposes, that the Parking Authority would develop and operate parking lots, while the city would own and operate parking meters in the Elmira streets. In order to use part of the city's parking meter profit, if any, to defray the losses, if any, of the authority's parking lots, the two public corporations, in May, 1950, entered into a contract, the validity of which is here questioned by plaintiff. The Appellate Division, for reasons with which we are in general agreement, has held the contract lawful, and has dismissed plaintiff's complaint.

The contract recites that the authority has been created to alleviate traffic and parking problems, in the city of Elmira, through the acquisition, operation and maintenance by the authority of adequate parking facilities, and for the payment of the cost of the same out of their operation; that the city is desirous of co-operating with the authority in this respect and, to that end, will turn over to the authority part of the revenues from the city's street meters. After reciting that the authority has authorized the issuance of $500,000 in bonds, the agreement goes on to provide that there shall be estimated, every year, the deficit, if any, in the funds of the authority to be available for the payment of its bonds, that the authority shall give notice to the city of the amount of such estimated deficit, if any, and that the city shall then pay the amount thereof to the authority. Such payments are, by the contract's terms, to be made from the city's net revenue from its own parking meters only, and, in no event, is more than $25,000 to be paid in any calendar year, the city further agreeing that, during the existence of the agreement, which is to run until the bonds are paid, the city may abandon any of its meters or change their sites but may not substantially reduce their number, and that the city will not cause to be operated any public parking areas except those operated by the authority. The only other important provision of the agreement is the one which says that the agreement shall be construed to be for the benefit not only of the parties but for the benefit of the holders of the bonds, also.

An Elmira Local Law (No. 5 of 1949) amended the city's charter to permit the execution of this very contract (see Local

Laws for 1949, published by the Secretary of State, p. 50). That Local Law, we are persuaded, is well within the grant of " Home Rule " powers found in section 12 of article IX of the State Constitution, and section 11 of the City Home Rule Law. Plaintiff insists, however, that the contract (and the Local Law) violates section 1 of article VIII of the State Constitution and, also, contravenes, or at least is not permitted by, the sixth and twelfth sections of the Elmira Parking Authority Act (Public Authorities Law, §§ 1487, 1493).

We deal, first, with the assertion of plaintiff that the making of this contract violated section 1 of article VIII of our State Constitution which says, among other things, that no city shall " give or loan its credit to or in aid of any individual, or public or private corporation or association ". The principal decision answering this is *Union Free School Dist.* v. *Town of Rye* (280 N. Y. 469), where this court held (p. 474) that the same constitutional language here cited did not prohibit gifts of money by a city or county to another public corporation for a public purpose. In other words, the first part of section 1 of article VIII of the Constitution prohibits a gift or loan of money by a county or city to an individual or private group, whereas the second part of the section, with which we are here concerned, prohibits only the giving or loaning, of its credit, by a county or city, to an individual or public or private group. The *Union Free School* case (*supra*) is flat authority that the city may do what the city is doing here, and what it is specifically authorized by Local Law No. 5 (*supra*) to do, that is, make a gift of its public funds to another public corporation for proper public purposes (see *Western N. Y. Water Co.* v. *Erie Co. Water Auth.*, 305 N. Y. 758; and see *Davidson* v. *City of Elmira*, 180 Misc. 1052, 1058, affd. 267 App. Div. 797, motion for leave to appeal denied 292 N. Y. 723).

Next, we come to plaintiff's allegation that the contract is forbidden by, or at least not authorized by, section 1487 of the Public Authorities Law. That lengthy section, in its first subdivision, empowers the city to convey to the authority for the latter's purposes any real or personal property owned by the city, subject to the requirement that, as to any real property so conveyed, title shall remain in the city. In other words, the city could have made a gift to the authority, of the parking

meters themselves. Subdivision 3 of section 1487 authorizes the making, between the city and the authority, of contracts for conveyances by the city to the authority of property, which contracts "may be pledged by the authority to secure its bonds", and the obligations of the city incurred thereby are to be provided for in the city's capital budget. We need not decide whether this language in terms authorizes the city to agree to make up, out of its meter revenue, part of the authority's operating deficit. At least, it does not forbid such a contract as we are here examining, and — what is more important — it is a broadly stated legislative consent that the city freely turn over property to the authority, and make contracts for such turning over, which contracts shall form part of the security for the authority's bonds. No reason appears why the Legislature, thus giving the city a free hand to assign to the authority any real or personal property useful for the authority's "projects", should at the same time forbid the allocation of part of the city's meter profits to help out the authority in making up the latter's deficits. In all these discussions, we keep in mind that both the city and the Parking Authority are public corporations of the people of Elmira carrying out public purposes (see legislative declaration in Public Authorities Law, § 1495, and see *Denihan Enterprises* v. *O'Dwyer*, 302 N. Y. 451), and that the members of the authority are public officials appointed by the Mayor of the city.

Plaintiff's chief reliance, it seems, for its charge that this contract is illegal, is on that part of the Elmira Parking Authority Law, which appears as section 1493 of the Public Authorities Law, and reads thus: "The bonds and other obligations of the authority shall not be a debt of the state of New York or of the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the authority". Such provisions are common, indeed almost universal, in the various statutory systems creating "public authorities" in this State.[1] Frequently, those statements, that municipalities are not liable on the authority's bonds and that

1. See Public Authorities Law, §§ 109, 132, 159, 207, 237, 262, 287, 312, 511, 534, 564, 583, 639, 663, 708, 806, 831, 855, 884, 1037, 1061, 1083, 1103, 1136, 1308, 1332, 1358, 1384, 1414, 1436, 1474, 1513, former 1531, 1553, 1577, 1611.

the bonds are payable out of the authority's funds only, are coupled with authorization or mandates of various kinds of direct assistance to authorities from those same municipalities.[2] Apparently, the Legislature did not see, nor do we, any inconsistency between the two kinds of statutory pronouncements. Provisions such as those in section 1493 mean just what they say: the authority's bonds are to be a debt of the authority only, payable out of its funds only. They do not forbid the transfer of money or property by State or city to an authority. Indeed, the numerous statutes cited in note 2 hereinbelow show that a city's nonliability on an authority's bonds and the same city's right or duty to assist the authority financially are part of the same conventional statutory pattern. We should not strain ourselves to find illegality in such programs. The problems of a modern city can never be solved unless arrangements like these (used in other States, too, see *State ex rel. Bibb* v. *Chambers*, 138 W. Va. 701) are upheld, unless they are patently illegal. Surely such devices, no longer novel, are not more suspect now than they were twenty years ago when, in *Robertson* v. *Zimmerman* (268 N. Y. 52, 62) we rejected a charge that this was a mere evasion of the constitutional debt limitations, etc. Our answer was this (p. 65): " Since the city cannot itself meet the requirements of the situation, the only alternative is for the State, in the exercise of its police power, to provide a method of constructing the improvements and of financing their cost. The statute in question affords an equitable and proper method of accomplishing such a result ". The *Robertson* case (*supra*) involved the transfer from the city of Buffalo of **property and rights far** more extensive and valuable than those in the present case.

The judgment should be affirmed, with costs.

FROESSEL, J. (concurring). I concur for affirmance with Judge DESMOND. I agree — and for the reasons stated by him — that the contract between the authority and the city in nowise violates section 1 of article VIII of the State Constitution.

While section 1493 of the Public Authorities Law provides that the authority's bonds shall not be a debt of the city, and

2. See Public Authorities Law, §§ 154, 230, 231, 255, 256, 281, 282, 308, 529, 556, 557, 579, 632, 633, 656, 657, 810, 835, 1041, 1053, 1079, 1095, 1355, 1379, 1404, 1407, 1449, 1468, 1507, former 1525, 1547, 1571, 1605.

that the city shall not be liable thereon, nor shall they be payable out of any funds other than those of the authority, this language does not forbid the city from sharing voluntarily with the authority its parking meter funds as provided in the contract. The city is charged with the burdensome obligation of solving its problem of traffic congestion, which plagues so many of our municipalities today. Since it may in its efforts to relieve this problem condemn real property at its own cost, not only for the projects of the authority, but for new highways and the widening of existing highways, as provided in subdivision 2 of section 1487, increase its police force or otherwise expend moneys in aid of this purpose, surely it may in aid of the same purpose and at much less cost voluntarily make grants to the authority.

Indeed, subdivision 12 of section 1485 of the Public Authorities Law, enacted simultaneously with section 1493, and which must be read together, expressly authorizes the authority to " accept *grants,* loans or *contributions* from the * * * *city* * * * and to expend the proceeds for *any* purposes of the authority " (emphasis supplied). It necessarily follows that if the city may thus make an unconditional grant of moneys it may voluntarily undertake a much lesser responsibility by limiting the amount of its contributions to not more than a specific sum, payable only out of parking meter fees when available, " for any purposes of the authority ".

Fuld, J. (dissenting). Section 1493 of the Public Authorities Law in the most unequivocal of language provides that bonds issued by a parking authority shall not be payable out of city funds:

> " The bonds and other obligations of the authority shall not be a debt of the state of New York or of the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the authority."

In the face of that explicit prohibition, I find it impossible to uphold as permissible the city's contract with the Elmira Parking Authority that it will make good any deficit, up to $25,000 a year — if the Authority is unable in any year to meet payments due on its bonds — by paying the amount of said deficit

out of the net revenue realized from the city's own parking meters. I see no escape from the conclusion that such an agreement plainly contravenes the statutory provision that the bonds of the Authority shall not be a debt of the city or be payable out of any funds other than those of the Authority.

Whatever force the local law — to which Judge Desmond refers (opinion, pp. 251–252) — may otherwise have, it certainly cannot override or affect the express prohibition of section 1493: section 1501, in so many words, provides that, " In so far as the provisions of this title are inconsistent with the provisions * * * of any local law of the city, the provisions of this title shall be controlling."

To suggest that the contract is valid, because section 1487 " empowers the city to convey to the authority for the latter's purposes any real or personal property owned by the city " (opinion, p. 252), leaves out of account the statute's limiting provisions that the city may make such a conveyance only of property owned by it and only " *for use by the authority as a project* or projects or a part thereof " (Public Authorities Law, § 1487, subd. 1), the term " project " being defined as " any area or place operated or to be operated by the authority for the parking or storing of motor and other vehicles " (§ 1483, subd. 6). The meaning of the statute is clear. It authorizes a present conveyance of property owned by the city to the authority, but it is essential that such property be used in the operation of a parking lot. The agreement before us makes no present conveyance of anything now owned by the city, and, beyond that, the moneys to be turned over to the Authority by the city are manifestly not designed for use in the operation, or in the construction or maintenance, of any parking lot.[1] The sole purpose underlying the contract provision in question is to bind the city for the

---

1. Nor does subdivision 12 of section 1485 — mentioned by Judge Froessel (concurring opinion, p. 255) — furnish support for respondents' position. That provision does no more than empower the authority to " accept grants, loans or contributions from the United States, the state of New York * * * or the city, or an individual, by bequest or otherwise, and to expend the proceeds for any purposes of the authority." This specification of ordinary powers accorded the authority cannot possibly be read or regarded as an implied grant of a power to the city (to pay bonds of the authority out of its own funds), in the face of section 1493's express prohibition to the contrary.

future so as to assure payment, out of city funds, to holders of the Authority's bonds after a deficit has occurred in the latter's own funds. This is made abundantly clear by section 8 of the agreement which provides that it shall be construed to be not only for the benefit of the parties, "but also for the benefit of the holders of any of the aforesaid bonds of the Authority." Quite obviously, the bonds of the Authority are, contrary to the proscription contained in section 1493, made payable, at least to the extent of $25,000 a year, out of funds other than those of the Authority.

Although I could, therefore, rest my dissent solely on the ground that the agreement is not authorized by the statute, I would go further and add that, in my view, the agreement also offends against section 1 of article VIII of this state's Constitution.

That constitutional provision, this court was careful to point out in *Union Free School Dist.* v. *Town of Rye* (280 N. Y. 469) draws "a clear distinction" between "a gift or loan of the *money* or *property*" of a unit of local government "and a gift or loan of its *credit*" (p. 474; see, also, *Western N. Y. Water Co.* v. *Erie Co. Water Auth.,* 279 App. Div. 1132, affd. 305 N. Y. 758). In this case, as already appears, Elmira agreed to guarantee the payment of the Authority's bonds, up to $25,000 a year, out of revenues to be realized by the city from its own parking meters. It is quite evident that the contract provided, not for any gift or loan of money or property on hand, but rather for a gift or loan of the city's *credit,* for an obligation and purpose not its own. The city's promise is, in essence, to make good, for an unspecified and indeterminate period and out of funds not in existence, an indebtedness incurred by the Authority. The circumstance that that promise is conditional in nature does not alter the fact that the contract calls upon the city to answer for the default of another. The vice of the arrangement is that it mortgages, for the use of others, future general funds of the city which it would otherwise have available for its own purposes, and opens the door to wholesale evasions of the applicable constitutional debt and taxing limitations. It was just this sort of situation at which the constitutional provision was directed. "The entire machinery of local government may break down," the court wrote in the

*Union Free School Dist.* case (*supra,* 280 N. Y. 469, 474), " if the credit of the units of local government required to carry out their governmental functions is impaired, and there may be danger of such impairment if a local unit is permitted to give or loan its credit or to borrow money in aid of undertakings outside of its own field.  To safeguard that credit the Constitution permits the use of its credit by a local unit only for the purposes of that unit, and prohibits it from giving or loaning its *credit* to or in aid of any ' *public or private* corporation.' " And, added the court (p. 480), " Within its defined limits the constitutional restriction must be rigidly enforced according to its letter and its spirit.  Every obligation of a governmental unit must rest upon its own credit and no governmental unit may give or loan its credit except for the purpose of meeting its own obligations incurred in the performance of a governmental function or duty which the State may entrust to it."

Nor is there any basis for the fear that " the problems of a modern city can never be solved " unless we uphold " arrangements like these " (opinion, p. 254).  Section 72-j of the General Municipal Law provides explicit warrant for a city itself to construct and operate a parking project without the intervention of a parking authority.  However, when an authority is set up, any contract entered into between the authority and the city, any arrangements made between them, must comply with the operative provisions of constitution and statute — and that is so no matter how desirable the end in view may appear to be.

The complaint states a cause of action; the Appellate Division's order of dismissal should be reversed.

VAN VOORHIS, J. (dissenting).  I concur in the dissenting opinion by Judge FULD.  Concerning the constitutional objection, it is pertinent to observe that a parking authority involves the exercise of a proprietary rather than a governmental function on the part of a municipality (*Augustine* v. *Town of Brant,* 249 N. Y. 198), and consequently the constitutional objection as well as the statutory objection discussed by Judge FULD is well taken (contrast *Town of Amherst* v. *County of Erie,* 260 N. Y. 361, with *Village of Kenmore* v. *County of Erie,* 252 N. Y. 427; *Union Free School Dist.* v. *Town of Rye,* 280 N. Y. 469).

Conway, Ch. J., Dye and Burke, JJ., concur with Desmond, J.; Froessel, J., concurs in a separate opinion; Fuld, J., dissents in an opinion in which Van Voorhis, J., concurs in a separate memorandum.

Judgment affirmed.