Wilfred A. Waltemade, J.
For the first time, the court is required 'to determine the constitutionality of chapter 345 of the Laws of 1968, as amended by chapter 1006 of the Laws of 1969 and chapter 623 of the Laws of 1971 (Act) enacted by our State Legislature to enable the formation of the United Nations Development Corporation (UNDO) for the implementation of its development program.
"Heretofore, the attacks made upon this public benefit legislation and the UNDC plan were determined on grounds not involving the question of constitutionality.
In the instance at hand, the regularity of the procedures which were followed to permit the participation of New York City (City), its administrations, commissions and departments, has been approved by the appellate courts (Beaux Arts Props: v. United Nations Development Corp., 68 Misc 2d 785, affd. 39 A D 2d 844, mot. for lv. to app. den. 31 N Y 2d 643).
*536 The application for an order of condemnation now before this court, is objected to by Charles Properties, Inc., owner of the land sought by the City in its role as condemnor for the purpose of initially fulfilling its obligations as a participant in UNDC’s development project.
If the Act were to be declared totally unconstitutional, then any action taken in reliance on its legality would be an exercise in futility. It follows that recognition must be given to the one whose land is to be taken by eminent domain, as having the status to attack the special legislation which is the footing for the broad concept of the development plan and condemnation, which is the foundation upon which the entire project depends.
The proposed condemnation by the City of Tax Lot 20 in Block 1337, situated at the northwest corner of UN Plaza (First Ave.) and East 44th Street, Manhattan, is an integral part of UNDC’s efforts to augment the facilities for the related United Nations (UN) activities. Prior to the State Legislature’s passage of the Act, it had been advised of the greatly expanded needs of the UN. Its membership and concomitant requirements have doubled since the completion of the UN headquarters building (L. 1968, ch. 345, § 2).
The area sought to be condemned embraces 18,902 square feet directly opposite the UN headquarters. This taldng is a segment of the first stage in UNDC’s total development to eventually improve approximately two square blocks contiguous to the same site. The proposal in its initial stage is to construct an office building, hotel, visitors’ center, parking garage, residential units, restaurant and retail ¡stores. These facilities will be made available, on a priority basis, to the UN, its organizations, agencies and missions.
The lease, effective on vesting of title, will continue until the full payment has been made of the bonds, including principal and interest, but in no event will the term of the lease exceed 99 years. On the terminal date, these premises with the then existing improvements will be delivered to the City free of all encumbrances.
The objectant opposes the application to condemn, alleging that the Act is an unconstitutional “ unlawful intrusion by New York into the foreign and international affairs of the United States of America (2) that “the use for which the property is sought to be condemned is not a public ’ use (3) that subdivisions (1) and (3) of section 10-c of the Act (L. 1971, ch. 623, § 6) which authorizes UNDO to issue bonds and create a debt service reserve fund, as .security for the borrowings, is an *537 unconstitutional “ unlawful pledge, gift or loan of the State’s credit ” in contravention of subdivision 1 of section 8 of article VJJL of the New York State Constitution.
(4) A further objection is made on the grounds that the United Nations already owns contiguous, available and vacant land just to the north of the existing UN headquarters, (5) that section 10-h of the Act which provides for assistance by State and city officers, departments, boards and commissions, is unconstitutional as violative of .subdivision 1 of section 8 .of article VII, and section 1 of article VIII of the New York State Constitution.
The claim that the creation of UNDO is New York’s gambit into foreign affairs is rejected. The only substantive connection that UNDO has with the UN, albeit tenuous, is found in section 4 of the Act. This section provides for the appointment of the 15 members that constitute t. :e board of directors of UNDO. “ The housing and development administrator of the city of New York and the chairman of the commission shall be members. Of the remaining members, eight shall be appointed by the governor, and five shall be- appointed by the mayor after consultation (emphasis supplied) with the secretary-general of The United Nations and the United States ambassador to the United Nations.” Except for this privilege of limited consultation, the UN has no control over the UNDO or New York’s participation.
Anent the second objection, it is fundamental that no property may be appropriated by any authority for a private use or for a private purpose (Taylor v. Porter & Ford, 4 Hill 140; N. Y. Const., art. I, § 7; Fifth Ave. Coach Lines v. City of New York, 11 N Y 2d 342, 347; Matter of New York City Housing Auth. v. Muller, 270 N. Y. 333, 343).
“ Public use ” is not subject to rigid definition but must be interjected in the light of the factual circumstances, prevailing conditions and, the legitimate concern of the community (Harris v. Thompson, 9 Barb. 350; Matter of New York City Housing Auth. v. Muller, supra, p. 340).
In support of this objection, it was urged that some of the facilities would be available at times for uses not related to the operations of the United Nations.
On a consideration of the whole concept of the development plan, it is apparent that the adventitious private use does not defeat the paramount public purpose of the project to supply the expanding and urgent needs of the UN. It is patently evi- „ dent to this court, that UNDO is a reasonable instrumentality to *538 effect the continuing discharge and fulfillment of the compact between the Government of these United States of America and the UN as mandated by section 27 of chapter 482 of the Laws of the 80th Congress of the United States of America (1947) (61 U. S. Stat 756).
A challenge based on incidental private use was raised and determined in 1875 by Matter of New York Cent. & Hudson Riv. R. R. Co. v. Metropolitan Gas Light Co. (63 N. Y. 326, 333): “nor does it constitute any valid objection to the proposed improvement, or render it any less a public necessity, because, perchance, it might confer benefits and advantages upon business arising from structures which are really essential to the successful operation of a railroad enterprise”.
More recently, the same principle was rearticulated and extended in Courtesy Sandwich Shop v. Port Auth. of N. Y. (12 N Y 2d 379, 388) where Burke.,. J. stated “ any use of the property sought to be condemned that is functionally related to the centralizing of all port business is unobjectionable even though private persons are to be the immediate lessees. ” This language and holding by the Court of A opeáis In the World Trade Center controversy is the authority for denying the objection to a partial private use contemplated in the UNDO proposal.
The objectant further argues that subdivisions (1) and (3) of section 10-c of the enabling Act are unconstitutional in that the State of New York may be called upon to replenish the debt service reserve fund after cértification that the balances on hand are insufficient to. pay the principal and interest for any succeeding year on UNDC’s. bonds authorized by the Act. In the first instance, the debt service reserve fund receives the proceeds of the sale of the bonds and thereafter it is maintained from the net revenue of UNDC’s operations on the site.
Subdivision 1 of section 8 of article VII of the Constitution provides: ‘ ‘ The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking ”. (Emphasis supplied.)
It must be noted that there is a clear distinction between a gift or loan of the State’s money as distinguished from the pledge of the State’s credit. Recognition was given to the distinction in Union Free School Dist. No. 3 v. Town of Rye (280 N. Y. 469, 474) wherein Lehman, J., stated: “ There is here a clear distinction in the scope of .the restriction * * between a gift or loan of the money or property * * * and a gift or loan *539 of its credit. * * * there is no prohibition against gifts of moneys to a public corporation for a public purpose ’ ’.
The principle of law enunciated in this cited case was reaffirmed in Comereski v. City of Elmira (308 N. Y. 248). While it is true that the court in both of these cases considered the constitutionality of section 1 of article VIII dealing with loans, gifts of money or use of credit of local governments, the rationale in these holdings is equally applicable to the application at bar since the language of subdivision 1 of section 8 of article VII is identical to that of section 1 of article VIII. There is no basis to discern a different legislative intent. The objectant’s argument that the payments, if made, to the bond debt service reserve funds by the State, are in effect a guarantee or pledge of the State’s credit, is predicated pn its position “that the UNDO Bonds would be unmarketable ”. In response to this pessimistic outlook, the market has already made a sophisticated favorable judgment by the purchase of $5,950,000 bond anticipation notes. “Wall Street’s ” appraisal was made after its consideration of the public statement contained in the bond’s prospectus, dated August 17, 1972, at page 11, “ Under the Constitution of the State, any moneys to be apportioned and paid by the State to the Corporation pursuant to Section 10-c(3) of the Act must first be appropriated by the State Legislature for such purpose. Such provision of the Act does not create a debt enforceable against the State or bind or obligate the Legislature to appropriate or the State to apportion and pay to the Corporation such moneys ”.
The Street’s evaluation was perforce predicated on the knowledge of the provision contained in the Act: “ § 12. State and city not liable on bonds or other obligations. The bonds and other obligations of the corporation and its subsidiaries shall not be debts of the state or city of New York, and neither the state nor the city shall be liable thereon.”
Objectant’s contention that there is no necessity for the taking because of the availability of vacant land owned by the United Nations which was expressly-reserved for «future building, is npt legally tenable. Location and site selection is a legislative function with which the courts may not interfere (Matter of Townsend, 39 N. Y. 171; Matter of City of New York [Ely Ave.], 217 N. Y. 45; Matter of Pagano Realty Corp. v. O’Dwyer, 195 Misc. 157, affd. 275 App. Div. 705).
Finally, the objection raised with respect to section 10-h of the Act authorizing any agency or department of the State or city to render services within their respective functions as may be *540 requested by UNDO, lacks merit. Fundamentally, this objection .is a reiteration of the contention raised earlier with respect to subdivisions (1) and (3) of section 10-e, which this court has found to be constitutional. Section 1 of article VIII of the New York State Constitution is not abridged by the provisions of section 10-h of the Act (Union Free School Dist. No. 3 v. Town of Rye, 280 N. Y. 460, supra).
This court concludes that the enabling Act creating UNDO and empowering it to exercise the functions necessary to expand the facilities of the UN World Headquarters here in New York is constitutional. In accord with this finding, the court is simultaneously signing an order of condemnation which will permit the forthwith acquisition of the first site in the over-all development plan.