*422 OPINION OF THE COURT
Joseph P. Kuszynski, J.
In this proceeding the County of Niagara, hereinafter Niagara, challenges the statutory scheme which mandates it to contribute to the operating expenses of the Niagara Frontier Transportation Authority, hereinafter NFTA.
Since 1974 Niagara has been required to contribute $191,-600 annually to the NFTA. It objects to the past and any future payments upon the grounds the NFTA was created to be self-sustaining and also that Niagara and the NFTA did not enter into any joint support agreement obligating Niagara to defray part of NFTA’s operating deficits.
All parties are in accord that no substantial question of fact exists and therefore move and cross-move for summary judgment.
The Attorney-General appears in this litigation as counsel for the State Comptroller pursuant to section 71 of the Executive Law to defend the constitutionality of section 18-b of the Transportation Law.
The State Legislature created the NFTA, a public benefit corporation on September 1, 1967 (see Public Authorities Law, § 1299-a), for the purpose of "the continuance, further development and improvement of transportation and other services related thereto within the Niagara Frontier transportation district” (Public Authorities Law, § 1299-d, subd 1), which embraces the Counties of Erie and Niagara.
The Legislature further declared NFTA’s purposes "are in all respects for the benefit of the people of the state of New York and the authority shall be regarded as performing an essential governmental function in carrying out its purposes” (Public Authorities Law, § 1299-d, subd 2).
At the time of NFTA’s birth, there was no provision for contribution by Niagara to NFTA’s operating expenses.
With the onset of the fuel "energy crisis” in 1974, it became clear that an urgent need exists for an effective alternative means of travel. The State Legislature chose to develop the neglected and under-utilized publicly and privately operated mass transportation systems. (See L 1974, ch 118, § 1, Legislative findings.) In so doing, the Legislature enacted section 18-a of the Transportation Law, effective April 1, 1974, which remained in effect until May 1, 1975 and was then replaced by section 18-b of the Transportation Law, now in effect.
*423 The legislative findings accompanying the adoption of section 18-a of the Transportation Law, in part provide: "Unfortunately, the spiraling costs of operation and the declining passenger loads carried by these systems have combined to result in chronic operating deficits for the majority of transit operators * * * The present method of financing operating deficits on an ad hoc basis has proven wholly inadequate * * * It is vital to the well being of the state and its citizens ... to assist . . . and to insure the preservation, rehabilitation and upgrading [of commuter rail, rapid transit and bus transit systems, and to] be in a position to qualify for federal rail service continuation subsidies” (L 1974, ch 118, § 1).
Every year since 1974 the State appropriates $104,000,000 for mass transportation operating assistance purposes. Of this amount, $1,770,000 is appropriated towards the operational costs of the NFTA which has to be matched by the Counties of Erie and Niagara in accordance with fixed percentage rates of 89.2% and 10.8% respectively.
Paragraph c of subdivision 5 of section 18-b of the Transportation Law declares that in the event a county should fail to make its required payment, the State Comptroller is directed to withhold an equivalent amount of State aid allocated to the county and pay over that amount to the public transportation authority.
In the period from May 1, 1974 through October 1, 1976, Niagara has refused to make its required quarterly service payments totaling $191,600 annually. Accordingly, the State Comptroller, invoking the powers granted him by paragraph c of subdivision 5 of section 18-b of the Transportation Law, withheld equivalent amounts of State aid from Niagara and paid them over to the NFTA. Beginning January 1, 1977, Niagara has made the required payments directly to NFTA.
After some five years’ experience with the State-wide mass transportation operating assistance program, Niagara now brings this action seeking a declaration that it is not required to make operating assistance service payments to the transportation authority which services its county.
In its complaint Niagara seeks a declaration by this court that the earlier section 18-a and the present section 18-b of the New York Transportation Law do not apply to the County of Niagara and its relationship to the NFTA, because these enactments conflict with the enabling provisions, purposes and powers of the NFTA contained in subdivision 3 of section *424 1299-f of the Public Authorities Law which created the transportation authority and declared it to be a self-sustaining public benefit corporation.
Niagara further asks, if sections 18-a and 18-b of the Transportation Law are deemed to apply, a declaratory judgment be entered that such statutes are unconstitutional as applied to Niagara and the NFTA because these statutes violate section 1 of article VIII of the New York State Constitution, which prohibits counties and municipalities from giving or loaning money for private or public undertakings and section 2 of article VIII thereof, which bars municipal indebtedness for nonmunicipal purposes.
Niagara and the NFTA did not at any time enter into a joint support agreement. Absent such an agreement, Niagara contends, the method provided for in section 18-b of the Transportation Law in exacting a contribution toward NFTA’s operating expense, constitutes a coerced tribute which does not square with the constitutional provisions of section 1 of article VIII, which Niagara maintains needs a voluntary contractual underlay nor with the language of section 18-b of the Transportation Law itself. Niagara cites the legislative memorandum (NY Legis Ann, 1975, p 366) and the Governor’s memorandum (NY Legis Ann, 1975, p 415) in support of its contention.
The Niagara Frontier Transportation Authority, its chairman Chester R. Hardt and the State Comptroller as defendants respond that the statute under attack, i.e., section 18-b of the Transportation Law, is entitled to the same strong presumption of constitutionality enjoyed by all legislative enactments. (Lincoln Bldg. Assoc, v Barr, 1 NY2d 413; Fenster v Leary, 20 NY2d 309; Matter of Bronx Parkway Comm, v Hylan, 119 Misc 785, affd 206 App Div 688, affd 236 NY 593.) While the presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt. (Matter of Fay [Dewey], 291 NY 198; Lindsley v Natural Carbonic Gas Co., 220 US 61; Wiggins v Town of Somers, 4 NY2d 215.) Because involved is a financing statute "[w]e should not strain ourselves to find illegality in such programs.” (Comereski v City of Elmira, 308 NY 248, 254.)
NFTA further responds that transportation is a matter of State concern and the State Legislature in the exercise of its sovereign capacity has the right to mandate municipal appropriation for any matter of State concern.
*425 Plaintiff Niagara’s contention that mandatory contributions towards the NFTA conflict with sections 1 and 2 of article VIII of the State Constitution fails to recognize the powers of the State to act in matters of compelling public interest. In Matter of Toia v Regan (40 NY2d 837) the County of Erie challenged the constitutionality of the State legislative program which required it to appropriate funds for social services. The Court of Appeals held that the Legislature did not violate the State Constitution by mandating local appropriations for this public purpose.
Section 1 of article VIII of the New York State Constitution regulates municipal spending by prohibiting a county from making a gift or loan of money or extending its credit to an individual or private group. However, the courts of this State have consistently held that this provision does not bar the giving or loaning of money to a public corporation for a public purpose. (See Union Free School Dist. No. 3 v Town of Rye, 280 NY 469; Hoyt v County of Broome, 285 NY 402; Comereski v City of Elmira, 308 NY 248; supra; Western N. Y. Water Co. v Erie County Water Auth., 305 NY 758.)
Municipal expenditures for the purpose of providing a public transportation system have long been recognized as a valid public purpose not conflicting with the State Constitution. (Sun Print. & Pub. Assoc. v Mayor, 152 NY 257; Admiral Realty Co. v City of New York, 206 NY 110; Matter of McAneny v Board of Estimate & Apportionment, 232 NY 377.) The United States Congress has also declared that mass transportation is a public purpose to be supported by Federal and local funding. (See Urban Mass Transportation Act, US Code, tit 49, § 1601.)
Nor does subdivision 5 of section 18-b of the Transportation Law do any violence to section 2 of article VIII of the State Constitution. (See Matter of Tobin v La Guardia, 290 NY 119; Village of Kenmore v County of Erie, 252 NY 437.) There is no claim of Niagara’s having incurred any indebtedness in order to satisfy the payment obligation required by the challenged statute. (County of Oneida v City of Utica, 260 App Div 363, affd 285 NY 788; Union Free School Dist. No. 3 v Town of Rye, supra.) Furthermore, in a broad sense the statute in issue merely authorizes the State through its Comptroller to reallocate its own funds and turn them over to the NFTA, if Niagara declines to contribute for services received from the NFTA.
*426 Since NFTA does provide mass transportation services for the residents of Niagara, no joint support arrangement between Niagara and NFTA is required by section 18-b of the Transportation Law to make its provisions operable. Subdivision 1 of section 18-b of the Transportation Law in pertinent part, provides as follows: "Within the amounts made available therefor by appropriation, a statewide mass transportation operating assistance program is hereby established for the purpose of making payments toward the operating expenses of public transportation systems. For the purposes of this section, the term public transportation system shall mean any public benefit corporation constituting a transportation authority which provides or contracts for the provision of (under joint support arrangements) mass transportation services” (emphasis added).
The plain meaning of this statutory definition is that in order to be eligible to receive operating assistance, a transportation system must either provide mass transportation services or contract to provide these services. The "or” as used is disjunctive, rather than conjunctive as Niagara postulates. (See 56 NY Jur, Statutes, § 149.)
With reference to the remaining issue raised by plaintiff, the NFTA has specific authorization to accept financial payments from Niagara under subdivision 6 of section 1299-f of the Public Authorities Law and such payments are not gifts as plaintiff contends, but consideration for a public benefit received. Public transportation services have a recognized county purpose, and it is within the power of the State to obligate a benefited local municipality to financially support the service.
It is concluded that there is no constitutional infirmity in the statutory scheme which mandates the County of Niagara to contribute toward the operations of the Niagara Frontier Transportation Authority.
Summary judgment is granted to defendants dismissing plaintiff’s complaint upon the ground the causes of action alleged therein are without merit as a matter of law.