*849 OPINION OF THE COURT
Rudolph U. Johnson, J.
Plaintiffs, real property owners and taxpayers of the defendant, City of Buffalo, commenced the underlying action seeking:
(1) A declaratory judgment determining, adjudging and declaring: (a) that chapter 280 of the Laws of 1978, which amended article 12-A and enacted article 12-B of the Real Property Tax Law to be unconstitutional; (b) that the actions of the State Board of Equalization and Assessment establishing special equalization ratios for the valuation of taxable real estate for the City of Buffalo for the tax years 1974, 1975, 1976, 1977 and 1978 were arbitrary and unlawful and should therefore be vacated; (c) that the actions of the City of Buffalo in levying taxes upon real property pursuant to the amended statute and the determination of the State board is necessarily void and illegal.
(2) A permanent injunction prohibiting defendant, City of Buffalo, from collecting or levying tax on real property upon the basis of the purported special equalization ratios.
(3) A declaratory judgment directing the defendant, City of Buffalo, to refund those real property taxes collected in the fiscal year 1978-1979 and found to be in excess of the constitutional tax limit.
Both plaintiffs and defendants now move for summary judgment inviting this court to decide whether article 12-A of the Real Property Tax Law (§§ 1250-1254) and article 12-B of the Real Property Tax Law (§§ 1260-1264) which authorized the promulgation of special equalization ratios are an unconstitutional evasion of the tax and debt-contracting powers of the State’s various municipal divisions as set forth in section 10 of article VIII of the State Constitution.
It is factually agreed that there now exists, within defendant, City of Buffalo, two separate sets of equalization ratios, namely, the annually issued regular equalization ratio and the new special ratios, and that the lower the ratio (expressed as an assessment percentage), the higher the allowable taxing limit.
While the regular equalization ratio continues to be used for various interarea purposes such as per capita State assistance, State aid to education, etc., the special equalization ratio is intended for the limited intra-area purpose of computing the *850 local real estate tax levy as well as the city’s constitutional debt limit.
That debt limit is constitutionally fixed in section 10 of article VIII at 2% of the average full valuation of taxable local real estate. The "average full valuation” is to be obtained by applying the equalization ratios as established by the State Board of Equalization and Assessment to the corresponding assessment rolls for the latest tax year and the four immediately preceding tax years, thus reaching a "full valuation” for each such taxable year, adding those valuations together and dividing by five.
The following tables are descriptive of the resultant difference in the calculated debt limit under the new special equalization ratios, from which plaintiffs now seek relief:
TABULATION I
Assessed Regular Equal. Ratio Full
Year Valuations -or-Assessment Percentage Valuations
1974 $969,262,156 54 $1,794,929,919
1975 $963,055,277 47.15 $2,042,535,052
1976 $954,152,392 46.25 $2,063,032,199
1977 $945,740,571 42.69 $2,215,367,934
1978 $936,573,354 41.24 $2,271,031,411
$10,386,896,515
Five Year Average: $2,077,379,303
2% Tax Limit: $41,547,586.06
TABULATION II
Assessed Special Equal. Ratio Full
Year Valuations -or-Assessment Percentage Valuations
1974 $969,262,156 41 $2,364,054,039
1975 $963,055,277 39 $2,469,372,505
1976 $954,142,392 37 $2,578,790,249
1977 $945,740,571 35 $2,702,115,917
1978 $936,573,354 34 $2,754,627,512
$12,868,960,222
Five Year Average: $2,573,792,044
2% Tax Limit $51,475,840.88
In reviewing this matter, the arguments presented and submitted legal memoranda, we are compelled to do so before the backdrop of the presumption of constitutionality afforded all legislative enactments. With a declared judicial mandate to *851 avoid a conclusion of unconstitutionality, if fairly possible, this presumption may only be rebutted by a showing beyond a reasonable doubt of constitutional invalidity. (Montgomery v Daniels, 38 NY2d 41; Matter of Malpica-Orsini, 36 NY2d 568.)
As stressed by plaintiffs, we are also mindful of recent appellate court pronouncements, most notably, Hurd v City of Buffalo (41 AD2d 402, affd 34 NY2d 628); Bethlehem Steel Corp. v Board of Educ. (44 NY2d 831), which have emphasized that patent circumvention of constitutional fiscal taxing restrains should not be tolerated. We do not believe, however, that the rationale of those cases can be extended here, to condemn the defendant, City of Buffalo’s, actions as predicated upon the Legislature’s amendment of article 12-A and enactment of article 12-B of the Real Property Tax Law.
In the cited decisions, the Appellate Division and the Court of Appeals found various legislation to be constitutionally invalid as such legislation purported to permit various municipalities and school districts to exempt from the computation of the total amount of tax levy authorized by section 10 of article VIII, those funds appropriated for retirement, Social Security, and health and dental insurance.
In the instant case, articles 12-A and 12-B of the Real Property Tax Law seek, not an exemption of designated expenditures from the taxing ceiling, but only to allow certain municipal divisions the ability to tax at the maximum constitutional limit by permitting, for that purpose only, the recalculation of the applicable ratios used in determining "average full valuation”.
We cannot, therefore, find that the Legislature has acted without the letter of the State Constitution. Nor can we conclude, as have plaintiffs, that the term "ratio” as used in section 10 of article VIII, once arrived at, should be construed as a final constant factor to be implemented for all enumerated purposes and that, therefore, any recalculation of the ratio would be arbitrary and illegal. Section 10 of article VIII of the New York Constitution merely provides that "full valuation” shall be determined by such agency "as the legislature shall by law direct”, by an application of the equalization ratio, and that within its discretion, "[t]he legislature shall prescribe the manner by which such ratio shall be determined”.
As anticipated by the constitutional drafters, these ratios, of necessity, are flexible and defy precise accuracy. There is, *852 therefore, no constitutional mandate of any set method of determining the equalization ratio. The Legislature has, accordingly, granted to its agent, the State Board of Equalization and Assessment, the freedom to "avail itself of all information appearing in its office” (Real Property Tax Law, § 1202, subd 2). The calculated ratio is thus no more than the Legislature’s expressed opinion which opinion is always subject to legislative review and amendment.
If, then, the Legislature has determined a need for relieving the mounting financial stress of its municipal divisions and concludes that this may be accomplished by recalculating , the regular equalization ratio through an application of more current, more accurate or fairer information, it has near complete autonomy to do so. As stated in Matter of Long Is. Light. Co. v State Tax Comm. (45 NY2d 529, 535): "It first should be recognized that, subject to constitutional inhibitions, the Legislature has very nearly unconstrained authority in the design of taxing impositions. From another perspective, fairness and equity are not the principal criteria against which the validity of tax statutes is to be determined. Similarly, when equal protection claims are to be weighed the rule is elementary that in taxation, even more than in other fields, Legislatures possess the greatest freedom in classification (Shapiro v City of New York, 32 NY2d 96, 103).”
Indeed, as further noted by the Court of Appeals in Comereski v City of Elmira (308 NY 248, 254) this autonomy is not limited even if it appears to be used as an evasion of constitutional constraints: "We should not strain ourselves to find illegality in such programs. The problems of a modern city can never be solved unless arrangements like these * * * are upheld, unless they are patently illegal. Surely such devices, no longer novel, are not more suspect now than they were twenty years ago when, in Robertson v. Zimmerman (268 N. Y. 52, 62) we rejected a charge that this was a mere evasion of the constitutional debt limitations, etc. Our answer was this (p. 65): 'Since the city cannot itself meet the requirements of the situation, the only alternative is for the State, in the exercise of its police power, to provide a method of constructing the improvements and of financing their costs.’ ”
In the case before us, the Legislature remains within the letter of the State Constitution for it has not stepped beyond the taxing ceiling, as done in Hurd and Bethlehem Steel Corp., by creating various exemptions to that limit, but is *853 merely exercising its authorized discretion to determine the equalization ratio, which figure, adjustable by nature, constitutes one part of the formula used in calculating the constitutional limit itself.
Lastly, the Legislature’s decision to adjust only those ratios used in calculating "average full valuation” as applied in levying real property tax and setting debt limits, while perhaps novel, is, nevertheless, within the legislative prerogative upon which this court may not presume to impose its own opinion. As stated in Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y. (46 NY2d 358, 369-370): "Courts are required to exercise a large measure of restraint when considering highly intricate and imaginative schemes for public financing or for public expenditures designed to be in the public interest. Some may be highly controversial. But when a court reviews such a decision, it must operate on the rule that it may not substitute its judgment for that of the body which made the decision. Judges, however much they might disagree with the wisdom of the act under review, are not free to invalidate it on that ground (Matter of Malpica-Orsini, 36 NY2d 568, 570, 571).”
Accordingly, defendant’s motion for summary judgment, dismissing the complaint of the plaintiffs, is granted.