GEORGE C. DIEHL, C. E., INC., Appellant, *v.* CITY OF
LACKAWANNA, Respondent.

(Argued December 3, 1931; decided February 9, 1932.)

*Wortley B. Paul* for appellant.

*Rudolph S. Weinstein, Corporation Counsel (Charles Diebold, Jr.,* of counsel), for respondent.

Judgment affirmed, with costs; no opinion.

Concur: CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ. CRANE, J., dissents in the following memorandum in which POUND and HUBBS, JJ., concur.

CRANE, J. (dissenting). I cannot agree with the result reached in this case. The Statute of Limitations has been too strictly timed. Let me state my views.

The contract made by the city of Lackawanna with George C. Diehl, the engineer, called for more than plans and specifications. These were to be prepared, and the engineer was to do the work, if the sewer drainage system was to be built. The engineer made his surveys over hundreds of acres, attended many times before the departments of state at Albany, modified his plans to meet their approval, and finally submitted them to the city authorities. This did not terminate his work, nor was he to be paid at this time; there was nothing due until there was a definite determination upon the part of the authorities to end the project. After the submission of the plans it was part of his duty to appear and explain and to modify them if those in authority so directed. He did appear at the meetings of the taxpayers and explained the work. His contract was a continuing contract; to do anything in connection with his plans and specifications called for and to do the work if the plant was to be built. If the city decided not to build, he was to be paid for his work to date. There was no discontinuance or authoritative termination of his employment until November 29, 1929, when the Mayor told him that they were not going on with the work. The Mayor, W. H. Lohr, gives this testimony:

" Mr. Diehl wanted to know whether we were going to go through with our sewer, and I said ' I don't think so, because the people don't seem to care to have it put in.' Then the question of the payment for the plans

and specifications came up, Mr. Diehl said it was customary to charge three per cent for the plans and specifications, and six per cent if the work was gone through with. So I said to Mr. Diehl, ' You send in a voucher.'

" Q. You told him that right after that meeting in July, 1928? A. In Mr. Diehl's office, after I was called in there.

" Q. In 1929? A. In 1929.

" Q. The time that he wrote you to come in? A. Yes." (This is conceded to be November 29, 1929.)

This was the first official notice that Diehl had from the city of Lackawanna that the project was dropped, and that the city would pay for the work already done. Under no circumstances can I see how he would be justified in presenting a bill or demanding payment before the authoritative termination of his contract. This was given by the Mayor, November, 1929.

The meetings of the taxpayers, held in the summer of 1929, were advisory, and no part of the local machinery for the awarding of this contract or the building of a sewer disposal plant. The charter of the city of Lackawanna, sections 82 and 86, providing for extraordinary expenditures, does not apply to this work. The General City Law (Cons. Laws, ch. 21), sections 20 and 22, did apply, and empowers the Common Council to incur indebtedness for a municipal purpose, and to make the same payable out of, or, a charge, or a lien upon specific property, to wit, the sewer district. The provisions of the charter applied to expenditures to be raised by taxation upon the entire city.

The Common Council of the city of Lackawanna, and the Mayor, acting under the powers conferred by the General City Law, legally executed the contract with Diehl. The nature of it I have stated. The payments under it, or because of it, were not due until November of 1929. This was within one year of the bringing of the action, which was commenced August 21, 1930. The defendant's charter (Laws of 1909, ch. 574, § 220) provides: "All actions brought against the city upon any

contractual liability, expressed or implied, must be commenced within one year from the time that the cause of action accrued." This action was commenced within the year from the time this cause of action accrued, which was November 29, 1929, when the plaintiff was notified that the sewer disposal plant project was not to be put through. While Diehl might reasonably have supposed after a taxpayers' meeting in July, that the city authorities would abandon the job, he was not legally justified in making this assumption. Under the General City Law, the city of Lackawanna could have built the sewer in spite of the taxpayers' vote. Their opinion was advisory, not a prerequisite. The Mayor and the Common Council were the ones to notify the plaintiff and to terminate his contract, which, as I have said, was a continuing one, lasting until definite action was taken.

The Appellate Division reversed only one finding. This read: " That the plaintiff's cause of action accrued upon the auditing and approval of its claim by the defendant's Council on November 29, 1929," and this was stated in the opinion. The order contains no reversals of any findings. All the other findings are, therefore, affirmed. The tenth finding reads as follows:

" 10. That the plaintiff in this action was engaged and hired by the defendant to, and was under obligation, to make the necessary plans and specifications for the sewage disposal plant and sewer system in the Fourth Ward of the defendant and to do and perform as a part of said contract all the necessary engineering work consisting of alteration or changing of the plans and doing all the necessary engineering work required down to the time when the actual letting of the contract by the defendant for the improvement should take place." Then we have the following:

" 19. That in the year 1928 two public meetings were held of residents of the defendant interested in the building of the improvement; that these meetings were called by the defendant's City Clerk and that a repre-

sentative of the plaintiff attended each of said meetings. These meetings were not called for the purpose of complying with the provisions of defendant's charter.

" 22. There were no acts or events prior to November 29th, 1929, which would cause the plaintiff to believe that the defendant had abandoned the intention to construct the sewer improvement project, or that definitely indicated to the plaintiff that the sewer improvement project was not to be carried out by defendant.

" 23. That the plaintiff's contract to prepare plans and specifications for a sewer system and sewage disposal plant was not completely and fully performed by the plaintiff until either the contract was let for the construction of the sewer improvement project or until the plaintiff was notified by the defendant that the defendant was not going to proceed with the making of the improvement, or that the plaintiff's services were no longer needed or desired by the defendant.

" 26. The plaintiff was requested by the defendant's Mayor to submit a verified voucher for the amount of its claim which was presented to the defendant in the sum of $15,000 and acted upon by the defendant's Council at a meeting of said Council held on November 29, 1929, when the plaintiff's claim in such amount was audited, approved and ordered paid by the defendant's Council, and a bond issue was authorized by the Council to pay the same."

In view of these established facts approved by the Appellate Division, how can we hold that the dismissal of the complaint was justified? I think this case should be reversed and the judgment of the Trial Term affirmed.