Saul S. Streit, J.
Motions Nos. 39, 47, 71 and 185 of the March 21, 1967 calendar are consolidated here for the purpose of disposition.
Preliminarily, the motion by alleged taxpayers to intervene in the principal action here involved (Motion No. 185) is denied and the Corporation Counsel’s cross motion to dismiss the complaint in their separate taxpayers’ action is granted. The relief these taxpayers are seeking is, in effect, in the nature of mandamus, namely, to compel the appropriate officials of the City of New York to take all necessary action to turn over to the Transit Authority the $84.3 million involved in these proceedings.
It is well-settled law, however, that one who is merely in the general class of “ taxpayer ” is not a person aggrieved who may complain of the actions of a public official by way of an article 78 proceeding (Matter of United Press Assn. v. Valente, 308 N. Y. 71, 84-85; Matter of Blaikie v. Wagner, 46 Misc 2d 441, 443; Matter of Hattem v. Silver, 19 Misc 2d 1091). Concededly, the right has been conferred upon a taxpayer to maintain an action against any person acting on behalf of a municipal corporation to prevent illegal waste or injury to the property of the municipality (General Municipal Law, § 51; Altschul v. Ludwig, 216 N. Y. 459, 463). The complaint in the subject suit, however, is not predicated on these grounds.
For these reasons, therefore, a taxpayer’s action does not lie and plaintiffs taxpayers have no standing to sue separately or to intervene in the pending principal action by the City of New York and its Board of Estimate against the Mayor and the City’s Transit Authority. In any event, inasmuch as the relief sought in the taxpayers’ action and in their motion to intervene is essentially the same as that requested in the principal suit here involved, the determination of the court, as hereinafter set forth, would be similarly binding on these plaintiffs had their request been proper and granted.
It is appropriate to note here that while the afore-mentioned principal action names the City of New York as a party plaintiff, it is the contention of the Corporation Counsel of the City of New York that insofar as said city is concerned, this lawsuit was commenced without proper authority. The Corporation Counsel asserts that the appointment of a Special Assistant Corporation Counsel, for the purported limited purpose of acting as attorney for the Board of Estimate herein, did not empower such ‘‘ special counsel ” to commence an action on behalf of the City of New York.
*629 For reasons more fully indicated hereinafter, the court does not deem it necessary to discuss at any length these issues raised by the Corporation Counsel or to dispose at this point of his motion with respect thereto. Therefore, while recognizing the subject challenge to the city’s position as a party plaintiff, nevertheless, for the purposes of this memorandum-opinion, the City of New York will be treated as a proper party here and is included within the court’s terminology and use of the noun “ plaintiffs ”.
Thus, with regard to the remaining three companion motions, the moving papers before the court indicate that on or about January 26, 1967, plaintiffs instituted an action for declaratory judgment whereby, in substance and effect, they sought a determination that:
1. The City of New York has the legal power and authority to provide funds to the New York City Transit Authority to maintain or support the operating costs of the city’s transit system;
2. The Transit Authority has the right to accept such funds from the city for these purposes;
3. Chapters 1, 2, and 3 of the Laws of 1966, empowered the city to provide funds to the Transit Authority to support the operations of the local transit system and the maintenance of its fare structure ;
4. The New York City Transit Authority must make a demand for and accept from the City of New York all or any part of the $84.3 million appropriation in the city budget for the year 1966 ;
5. Any such demand by the Transit Authority would constitute a valid, existing claim within the intendment of section 93d-3.0 of the Administrative Code of the City of New York and subdivision 5 of section 20 of the General City Law;
6. Local Law No. 26 of the Local Laws of the City of New York for 1966 is a valid and legally effective enactment; or, in the alternative, it must be submitted to the electorate by referendum at the next general election;
7. The Mayor of the City of New York is required to direct the proper city officials to transfer and pay over to the Transit Authority the subject $84.3 million appropriation.
In addition to certain ancillary protective relief within the scope of CPLE 3103 and 3122, and the Corporation Counsel’s noted application to dismiss the action as unauthorized (insofar as the City of New York is concerned, supra), defendants, by the pending motions under consideration here, seek to dismiss the complaint upon the grounds (a) it fails to state a cause of action and (b) there is no justiciable issue affecting the rights *630 or legal relations of the parties hereto (CPLR 3001 and 3211, subd. [a]). In the alternative, defendants ask for summary judgment in their favor.
Rather than dispose of the pending motions on the mere technical or procedural grounds urged by defendants, which would serve only to delay and postpone for a future day an inevitable resolution of these vital issues, the court deems it to be in the best interests of justice and the public welfare to treat these applications as motions for summary judgment (CPLR 3211, subd. [c]). Inasmuch as there are no questions of fact raised here, this procedure will enable the court to search the record and to make a final determination on the merits regarding the questions of law here involved which, undoubtedly, are of utmost significance and concern to the people of this city.
It appears from the papers before the court that after the recent New York City transit strike was settled, resulting in a substantial increase of the Transit Authority’s operating costs, its operating deficit for 1966 was estimated at approximately $84.3 million. In an effort to ease the dire financial crisis then faced by this city, the State Legislature enacted chapters 1, 2 and 3 of the Laws of 1966, which made available to New York City a sum of almost $100,000,000. Plaintiffs now argue that these legislative edicts authorize the city “ to devote its funds to the * * * Transit Authority to support the operations of the City Transit System and the maintenance of its fare structure ’ ’.
Neither an analysis of the three subject bills nor an examination of the Governor’s messages with respect thereto supports plaintiffs’ contention that these appropriations were intended as a subsidy to the Transit Authority to offset the effects of the transit strike, or as authority to the city to do the same. On the contrary, the Mayor’s sponsored legislation in Albany which would have specifically permitted New York City to subsidize its transit system’s 1966 operating deficit was defeated in the State Senate in early June, 1966 (Sen. Pr. No. 4457; Intro. No. 4219, dated March 3, 1966).
Furthermore, contrary to plaintiffs’ argument, nothing in the provisions of the three chapters relied on by them (supra) warrants the conclusion that the moneys referred to therein were in any manner associated with the Transit Authority or its deficit. The fact is that these appropriations specifically concerned (1) State aid payments for social welfare in New York City, (2) State aid for schools and (3) stock transfer tax revenues. The court is not unaware that plaintiffs have sub* mitted and, in their opposing affidavits, have referred to various *631 newspaper accounts which seemingly buttress their argument as to the intended use of the State’s appropriations. Nevertheless, these publications are not sufficient to refute the clear and unambiguous provisions of the subject legislation and the Governor’s expressed purpose in his three messages of necessity to the Legislature. (Governor’s Messages, dated Jan. 17,1966.)
Following the afore-mentioned defeat of the city-sponsored subsidy legislation, the $84.3 million budget item to cover the subject operating deficit was deleted by the Board of Estimate and the City Council. In lieu thereof, the budget was subsequently amended to include an appropriation in the same amount, but it was earmarked 1 ‘ solely to meet the claims of the Authority estimated at an amount up to $104,000,000 ’ ’. These purported “ claims ” included the full cost of pupil transportation, free transportation of policemen and firemen and expenditures for transit police. The Transit Authority then filed a claim in excess of $15,500,000 for reimbursement for the free transportation of police and firemen from January 9, 1961 to January 9, 1967 and for the sum of $318,596 for the free transportation of correction officers and inspectors of the Department of Sanitation during the period of April 7, 1965 to January 9, 1967.
In addition to the foregoing claims, on or about September 13, 1966, the City Council, overriding a veto of the Mayor, adopted Local Law No. 26, to take effect immediately. This law purports to amend the city’s Administrative Code (§ 117al0-1.0) by providing for an annual expense budget item of “ a sum sufficient, as determined by the council and the board of estimate, to maintain the rates of the New York City Transit Authority existing on January 1, 1966 ”. (Emphasis added.)
There is serious doubt as to the validity of Local Law No. 26, particularly inasmuch as, on its face, it conflicts with the enunciated strong State public policy which prohibits deviation from the “ self-sustaining ” principle applicable to the Transit Authority (Public Authorities Law, §§ 1202, 1205; see Matter of Weiss v. City of New York, 52 Misc 2d 391; Matter of Love, 155 N. Y. S. 2d 266, 269 et seq.; see, also, recently enacted Public Authorities Law, § 1203-b). The applicability and controlling effect of the cited sections of the Public Authorities Law have recently been thoroughly considered and adopted in Matter of Weiss v. City of New York {supra) and, therefore, do not necessitate further lengthy comment here. Suffice it to note that nothing in the decision of Comereski v. City of Elmira (308 N. Y. 248), cited and relied on by plaintiffs, in any way detracts from the relevant determination of the Weiss case.
*632 In any event, before Local Law No. 26 may be properly enacted (assuming it can overcome other legal objections thereto), it must first be approved by referendum, inasmuch as this law attempts to curtail the Mayor’s present charter powers with respect to budget items and to change his present right of veto of the Board of Estimate’s or City Council’s action in amending his appropriation proposals. (New York City Charter, § 39; Municipal Home Rule Law, '§ 23, subd. 1; subd. 2, pars, c, f.)
As indicated above, the city’s expense budget contained an appropriation of $84.3 million to meet “ claims of the Authority ” relating to pupil, police and firemen transportation and “ transit police expenditure ”. It is to be noted that there is no statutory or other legal authorization for expenditure of moneys by the city to pay such “ claims ” other than the provisions of section 93d-3.0 of the Administrative Code. This section, in substance, permits payment of claims, otherwise illegal or invalid, “if * * * public interests will best be served [thereby] ”. Significantly, however, the provisions of this section specifically prohibit any payment of a claim barred by the Statute of Limitations (see, also, (General City Law, § 20, subd. 5).
It necessarily follows that inasmuch as the transit system lease itself does not obligate the city to pay any of the claims asserted here, and in the absence of proof of any other contractual arrangement which so compels, the payment of these claims must be predicated only upon a theory of implied contract which, in effect, creates ‘ ‘ equities ’ ’ in favor of the Transit Authority within the scope and intendment of section 93d-3.0. As such, the controlling Statute of Limitations is the six-year period set forth in CPLR 213.
The allegations of the complaint, however, clearly indicate plaintiffs’ efforts to avoid the consequence of being barred, in greater part, by the six years’ Statute of Limitations. They argue that the claims involved here did not arise or come into existence until the expense budget containing the appropriation was adopted. Such contention is wholly without merit. The Statute of Limitations starts to run when the right accrues to the claimant, not when the individual against whom the claim is asserted has the money to pay (CPLR 203, subd. [a]; Diehl v. City of Lackawawna, 233 App. Div. 348, 349, affd. 258 N. Y. 579; Thompson v. Board of Educ. of City of Syracuse, 11 Misc 2d 603, 604, affd. 279 App. Div. 621, mot. for lv. to app. den. 279 App. Div 844; see, also, Matter of Miller v McKnight, 263 App. Div. 1024). Moreover, it is noteworthy that there is clearly evident in New York a strong public policy against payment by public *633 bodies of time-barred claims (see N. Y. Const., art. III, § 19; General City Law, § 20, subd. 5; Court of Claims Act, § 12, subd. 2; Admin. Code, § 93d-3.0; Homer Eng. Co. v. State of New York, 12 N Y 2d 508; Matter of City of New York [Elm St.], 239 N. Y. 220, 229). This policy clearly supports defendants’ position .regarding the “ claims ” here involved.
Moreover, it is fundamental that where a demand is made necessary by law, the Statute of Limitations begins to run from the time when the right to make such demand is complete (CPLR 206). Thus, contrary to plaintiffs’ arguments, in the instant matter, the Transit Authority could have filed claims with the city for each of the subject transportation and transit police items at any time during the 13-year period they cover. Nothing in statutory or case law supports plaintiffs’ unwarranted conclusion that the mere absence of a specific budget appropriation, in effect, bars a right to file a claim.
Under these circumstances, it is apparent that the Statute of Limitations, as specifically referred to in section 93d-3.0 of the Administrative Code, now prohibits payment of any part of the $84.3 million appropriation, except for the sum of approximately $16,000,000, representing, as hereinabove indicated, the duly filed claims for services rendered within the applicable six years, namely, during the period from January 9, 1961 to January 9,1967 {supra).
As for the remainder of the payments sought by plaintiffs, these time-barred claims would represent reimbursement for (a) the full cost of pupil transportation from July 1, 1953 to June 30, 1959, (b) furnishing free transportation to city police and firemen for the period of July 1, 1953 to January 9, 1961 and (c) the cost of maintaining the Transit Police Department from July 1,1953 to December 31,1959. Obviously, these claims are not within the statutory .six-year period.
In any event, contrary to plaintiffs’ contention, under the existing State statutes above referred to and discussed in detail in the recent Weiss decision {supra), a/ny attempt at subsidizing the Transit Authority’s operating costs must be held to be illegal. To accomplish the result sought by plaintiffs, specific, new, State enabling legislation is required (e.g., pending “ Regional Transportation Legislative Package ”, effective March 1, 1968, awaiting Governor’s signature,) inasmuch as the governing law creating and controlling the Transit Authority now mandates its operation on a self-sustaining basis (Public Authorities Law, § 1202; et seq. see Matter of Love, supra; Matter of Weiss v. City of New York, supra; see, also, L. 1964, ch. 513).
*634 Likewise, there is no merit to the allegations of plaintiffs’ complaint that the Transit Authority has already received certain subsidies with respect to the costs of the Transit Police Department and the transportation of school children. The Transit Authority, as noted in the moving papers, does not have any legal obligation to maintain a police department or to provide reduced fares for school children. Significantly, however, the school fares represent costs properly chargeable to education, 90% of which is reimbursed by the State (Education Law, § 3602, subd. 7).
Similarly, with respect to the Federal grant of $23 million referred to in the complaint, it clearly appears that such moneys were not a subsidy of the Transit Authority’s operating expenses, but constituted a capital grant for the purchase of new subway cars, for which the Transit Authority applied on behalf of the City of New York.
Thus, in the absence of appropriate legislative authorization, it must be concluded here that the City of New York has no legal right or power to pay cash subsidies to its Transit Authority in order to enable the latter to maintain the present rate of fare. Similarly, under existing State law, the Transit Authority has no power or authority to use any such payment for that purpose (Public Authorities Law, §§ 1202, 1205).
Living due consideration to the foregoing, therefore, judgment is rendered in favor of defendants declaring that:
(a) The City of New York may not, under present applicable law, appropriate or provide funds to the New York City Transit Authority for the purpose of subsidizing its operating deficit;
(b) The New York City Transit Authority has no legal power or right to accept funds for such purpose;
(c) Chapters 1, 2 and 3 of the Laws of 1966, did not provide for or authorize such subsidies by the City of New York;
(d) The Board of Estimate, under the provisions of section 93d-3.0 of the Administrative Code, City of New York, cannot pay to the Transit Authority any purported equitable claim for reimbursement which is barred by the controlling six years’ Statute of Limitations;
(e) The New York City Transit Authority has the authority and the duty to decline and refuse to make demand or claim upon the City of New York for all or any part of the $84.3 million appropriation in the budget referred to in the complaint, when such claims are barred by the pertinent provisions of section 93d-3.0 of the Administrative Code and subdivision 5 of section 20 of the General City Law;
*635 (f) The Mayor of the City of New York cannot, under present law, direct the disbursing officers and officials of this city to transfer and pay over to defendant Transit Authority the $84.3 million appropriation here involved;
(g) Local Law No. 26 of 1966, cannot take effect, even if otherwise legally unobjectionable, until approved by referendum at the next general election, pursuant to the provisions of section 39 of the Charter, and section 23 of the Municipal Home Buie Law.
In view of this determination, there is no need for any further consideration of the ancillary protective relief sought by defendants. Similarly, the Corporation Counsel’s application regarding the alleged unauthorized institution of plaintiffs’ action has hereby been rendered academic.