Gabrielli, J.
Plaintiff brings this taxpayer’s action seeking a judgment declaring the New York City Stabilization Reserve Corporation Act (L 1974, ch 594) invalid claiming, essentially, that the act is violative of the provisions of article VIII (§ 4, subd [c]) of the State Constitution in that the act sets up a framework and procedure which illegally permits the city to obtain additional operating revenues through the sale of *614 bonds by the corporation, created by the Legislature, without extending its debt obligations beyond the permissible limit of 10% of the valuation of real estate, the outside limit provided by the Constitution (art VIII, § 4, subd [c]).
Title 26 of the Public Authorities Law, comprising 20 sections (§§ 2530-2549) created the Stabilization Reserve Corporation (SRC), a "corporate governmental agency constituting a public benefit corporation” (§ 2532, subd [a]) and, in detail, provided for its operation and method of obtaining funds by the sale of bonds without a pledge of the full faith and credit of either the City or State of New York.
It is important to here note that the enactments to be construed are statutes adopted and promulgated by the State Legislature, and not enactments by the City of New York.
Section 2533 sets forth the legislative purpose as one to meet the city’s unprecedented fiscal crisis by setting up a corporation to assist the city in providing essential services during the fiscal years 1973-1974 and 1974-1975. The SRC is denominated a public service corporation (§ 2532, subd [a]) to which the Mayor is authorized to certify 150 million dollars for the 1973-1974 fiscal year and 370 million dollars for 1974-1975 (§ 2538). Upon such certification the SRC is authorized to sell up to 520 million dollars of its own bonds and notes and pay the proceeds to the City Comptroller to be used in the city’s general fund. The act further provides that the bonds are to mature in 10 years or less, and the principal and interest thereon are repayable in equal annual or semiannual installments (§ 2536).
The bonds and notes thus sold are the obligations solely of the SRC and, indeed, it is specified that "[t]he notes, bonds or other obligations of the corporation shall not be a debt of either the state or the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the corporation; and such notes and bonds shall contain on the face thereof a statement to such effect” (§ 2542).
It is further provided that principal on notes would be paid out of bond proceeds, and interest and principal on bonds would be paid out of an SRC Capital Reserve Fund which would be replenished annually for purposes of paying principal and interest on outstanding bonds during the current fiscal year (§ 2537).
*615 Section 2537 (§ 1, par [c]) provides that: "(c) To assure the continued operation and solvency of the corporation for the carrying out of its corporate purpose, provision is made in paragraph (a) of this subdivision for the accumulation in the capital reserve fund of an amount equal to the capital reserve fund requirement. In order further to assure such maintenance of the capital reserve fund, there shall be paid by the city to the corporation for deposit in the capital reserve fund on or before the first day of December, in each year, such amount, if any, needed for the purpose of maintaining the capital reserve fund at the capital reserve fund requirement as shall be certified by the chairman of the corporation to the mayor and the director of the budget on or before the fifteenth day of February next preceding; provided that any such amount shall have been first appropriated by or on behalf of the city for such purpose or shall have been otherwise made available.”
If the city fails to make such yearly appropriations, then the SRC chairman may certify to the State Comptroller the amount needed to maintain the fund at a proper level whereupon the comptroller will pay the first moneys available for the next succeeding payments to the city from the Stock Transfer Tax Fund and, if there remains a shortage, the first moneys available for the next succeeding payments of State per capita or other aid payable to the city from the State (§ 2540). The SRC is also authorized to accept gifts, grants or loans from the Federal Government or any of its agencies (§ 2535, subd [14]).
Plaintiffs suit was commenced on February 5, 1975. He requested the declaratory and injunctive relief already mentioned, alleging his taxpayer status and that the SRC Act was unconstitutional upon thé additional ground that it violates section 2 of article VIII of the Constitution since the city would be contracting indebtedness without pledging its full faith and credit for repayment; that it violates section 1 of article VIII which prohibits the city from giving or loaning its credit in aid of any public or private corporation; and that section 5 of article X prohibited the city from becoming liable for payment of any obligations of a public corporation.
Defendant city submitted no answer, but interposed a motion under CPLR 3211 (subd [a], pars 3, 7) to dismiss the complaint on the grounds (1) plaintiff had no legal capacity to sue and (2) that the pleading failed to state a cause of action. *616 Special Term overruled all of plaintiff’s contentions and granted summary judgment in defendant’s favor, apparently under the provisions of CPLR 3211 (subd [c]) permitting him to treat defendant’s motion as one for summary judgment, and directly declared the act constitutional. Special Term found plaintiffs contentions all based upon the argument that the city would be a debtor on the bonds and construed the statute literally to the effect that the city was specifically exempted from such status. This ruling, in turn, obviated plaintiffs arguments that the city was pledging its credit in aid of a public corporation and that it would be incurring indebtedness without pledging its full faith and credit. Plaintiffs contention concerning article X was not dealt with, but that would fall also upon the decision that the city in no way was obligated. The Appellate Division affirmed.
The case of Comereski v City of Elmira (308 NY 248) was relied upon by both Special Term and the Appellate Division. Justice Kupferman, in his brief dissent at the Appellate Division, said that (47 AD2d 367, 374) "[t]he case of Comereski * * * is easily distinguished. The parking meter authority there had an ostensible purpose and was not merely a conduit for circumvention”. Defendant city claims that Comereski is dispositive of all of plaintiffs contentions. In that case, the Elmira Parking Authority was created, authorized to sell bonds and to run the municipal parking lots. By amendment to the city charter, the city was authorized to contract with the authority to pay any yearly deficits incurred by the authority up to $25,000. Such money was to come from parking meter revenues collected by the city. The constitutional argument raised against this arrangement was that section 1 of article VIII was being violated in that the city was pledging its credit in aid of a public corporation. On this point the court held that the city did not contract to pledge its credit, but, rather, contracted to make a gift of up to $25,000 a year, if needed, which was in no way violative of the Constitution which only bars gifts to individuals or private groups. While that part of the Comereski decision is dispositive in the instant case insofar as it disposes of plaintiffs section 1 of article VIII argument, it does not. directly apply to his other constitutional arguments, although it obviously necessarily follows that if yearly deficit payments such as this are permissible gifts, then they are not debt obligations, this latter point going to the heart of plaintiff’s remaining arguments.
*617 On the facts, Comereski differs, of course, in that the parking authority could generate its own income by renting parking spaces whereas the SRC has no visible means of financial support except for what it can derive from the city, State or Federal governments. This apparently is what the dissenter below was driving at in that portion of his dissent I have quoted. This factual distinction, however,” while it may raise questions concerning the fiscal wisdom of the SRC operation (with which we need not concern ourselves), does not affect the constitutional points. The city here is no more obligated than was the City of Elmira to pay off the parking authority’s obligations. Even if it be conceded that the SRC is a mere "conduit”, such labeling does not necessarily violate the various aspects of the Constitution raised by plaintiff, all of which, as pointed out by Special Term, rest on the assertion that the city has become indebted or obligated. The very terms of the statute clearly preclude such indebtedness. The city may, for the two years in question, make payments of up to $520 million. It is not bound to. If such payments are not made and the SRC goes under because it is unable to collect from the other sources named, the city cannot be liable to the bondholders under the provisions of the SRC Act.
Other cases urged upon us for consideration are not especially helpful since they are factually and legally different in important respects which do not reach the legally novel plan with which we are dealing. In Robertson v Zimmermann (268 NY 52) the question presented" was whether the City of Buffalo’s indebtedness would be raised beyond constitutional limits because of the bonded indebtedness of its sewer authority. But it was pointed out in that case that the authority’s obligations would be payable out of its own revenues and that (p 62) "it must be borne in mind that there is not involved the diversion of any existing source of revenue of the city”. In Hurd v City of Buffalo (41 AD2d 402, affd 34 NY2d 628), where a legislative scheme providing for the funding of pension and retirement liabilities was declared in violation of the debt limitations imposed in article VIII, it was held that the plan lacked any rational basis since it attempted to exempt future pension payments from those taxes, the total of which could not exceed the real property tax limit of 2% as defined in section 10 of article VIII of the Constitution. In essence, the statute attempted to classify such future expenditures as, in effect, current expenditures for the years in which they would *618 be paid so as to conform to an exception to section 10 of article VIII exempting current expenditures from classification as debt. The courts reasoned that, by mere legislative declaration, prior obligations simply could not be called current obligations. In Hurd, the letter of the Constitution was being "twisted”. Here, it is being scrupulously observed in that the city incurs no obligation now or in the future.
In a summary of the merits, I am of the opinion that plaintiff’s argument that section 4 of article VIII is violated because of excessive indebtedness, is refuted by the statutory provision that in no way can the city become indebted. Plaintiff’s argument that section 2 of article VIII is violated since the city would be contracting indebtedness without pledging its full faith and credit, is also refuted by the statutory provision that in no way can the city become indebted. His argument that section 1 of article VIII is violated since the city would be loaning its credit in aid of a public corporation is refuted because, as we have previously held (Comereski v City of Elmira, 308 NY 248, supra), this type of contract to provide for the appropriation of a gift only is legally and constitutionally proper. His argument that section 5 of article X is violated since the city would become liable for payment of the SRC’s obligations is refuted because, again, the statute specifically disallows such liability.
Underlying all of this is the rationale in the Comereski case to the effect that if nonmandated deficit payments by the city to the authority are anything, they are only gifts. Thus, there is a double-barreled refutation of plaintiff’s contentions. The statute itself provides for no city debt liability, and Comereski holds approvingly that if the city should, in fact, make payments as provided for, such payments are constitutionally permissible gifts.
It is well to here point out, and indeed emphasize, that should the city appropriate money to help make up a deficit in any given year, or, should Stock Transfer Tax moneys and per capita State aid be tunneled thereto under subdivision (c) of section 2540 such payments would be a gift to a public corporation permissible under section 1 of article VIII of the State Constitution (Comereski v City of Elmira, 308 NY 248, supra; Union Free School Dist. v Town of Rye, 280 NY 469). It is basically upon this theory that similar city moneys are paid or diverted to other public benefit corporations such as the City University Construction Fund (Education Law, art 125-B, *619 § 6279), the New York City Housing Development Corporation (Private Housing Finance Law, art XII, § 656, subd 1, par e), the Transit Construction Fund (Public Authority Law, tit 9-a, § 1225-i, subd [b]) and the Municipal Bond Banking Agency Act (Public Authority Law, tit 18, § 2436, subd [3]), to name but a few. It will be observed that their statutory framework and the legislative language used in forming them are nearly identical to that of the SRC.
While the constitutional validity of these other enactments is not before us, we must assume that the legal and constitutional basis for the funneling of a municipality’s State-aid moneys to these other public benefit corporations by the State Legislature, is founded on the similar right of a municipality to make gifts to a public benefit corporation pursuant to section 1 of article VIII of the Constitution and the other cited authorities. Upon a contrary holding it could be argued, successfully or otherwise, that their funding would be illegal.
It is not questioned, as indeed it may not be, that the city has an absolute right, following the receipt of any State-aid moneys, to pay a portion thereof to a public benefit corporation (NY Const, art VIII, § 1); and based upon that permissible authority, the statutes here being considered specifically provide for such payment. The fact that the comptroller is permitted,* under certain circumstances, to pay a portion thereof directly to a public benefit corporation on behalf of the city, does not create any illegality, and we hold and find that no lien is thereby created on that fund. Basically, that which is actually accomplished is merely a directive by the State and city as to the manner in which the funds are to be distributed —a right, as we have pointed out, which the city possesses in any event. The moneys received by or due to the city is a gift for all purposes and may be used by the city in the manner herein described, and under no circumstances may it be deemed a lien.
Where, as here, the statutory scheme stays within the letter of the Constitution (and carefully so, I believe) then we should heed Judge Desmond’s statement in Comereski (308 NY 248, 254, supra) that "We should not strain ourselves to find illegality in such programs. The problems of a modern city can never be solved unless arrangements like these (used in *620 other States, too, see State ex rel. Bibb v. Chambers, 138 W Va 701) are upheld, unless they are patently illegal. Surely such devices, no longer novel, are not more suspect now than they were twenty years ago when, in Robertson v Zimmerman (268 NY 52, 62) we rejected a charge that this was a mere evasion of constitutional debt limitations, etc. Our answer was this (p 65): 'Since the city cannot itself meet the requirements of the situation, the only alternative is for the State, in the exercise of its police power, to provide a method of constructing the improvements and of financing their cost.’ ”
Plaintiff also raises the argument that aside from the SRC Act, and without relation thereto, the city has exceeded its debt limit and that this involves questions of fact for which a trial is required. Neither court below treated this contention, and rightly so, since no such separate cause of action is enunciated anywhere in the complaint. The thrust of the complaint is that the SRC arrangement is unconstitutional for the reasons discussed. As part of this, reference is made to paragraphs 3 and 4, to wit:
"3. Article VIII of the Constitution of the State of New York provides that the City of New York may not become indebted in an amount in excess of its constitutional debt limit as set out therein.
"4. The amount of borrowing power under the restriction aforesaid is insufficient to permit the sale of almost $700 million in bonds and notes by defendant Goldin on behalf of the City of New York which sale was announced by defendant Goldin on January 27, 1975.”
Neither, taken alone nor in combination, do these paragraphs make out a cause of action based on overindebtedness separate from that involved in the SRC question. The gravamen of the complaint is that because of the SRC funding plan the constitutional limitation "would be” exceeded. There is nothing there to indicate that there is otherwise an overextension made up of other debts.
Plaintiff raises an additional point which requires treatment. It is argued that he received insufficient notice that the court would treat defendant’s CPLR 3211 motion as a CPLR 3212 motion for summary judgment. Plaintiff himself specifically asked for judgment pursuant to CPLR 3211 (subd [c]), which converts the dismissal motion into a summary judgment motion, in his affidavit in opposition to defendant’s *621 motion, so he can hardly be heard to complain that the court should not have treated the motion in that fashion.
Finally, the city has argued against plaintiffs standing all through this litigation, but agrees that we should treat with the merits even if plaintiff is not a proper party. Here plaintiff seems clearly within the taxpayer provisions of section 51 of the General Municipal Law. Both lower courts wrote extensively on this point and our liberal interpretation of standing in Bloom v Mayor of City of N. Y. (28 NY2d 952) obviates the city’s technical arguments that here the SRC and the State are the real defendants and are not joined. The complaint is aimed directly at the SRC statutory scheme which involves the city and the manner in which the city remains in compliance with certain constitutional mandates. The city is thus a proper and necessary defendant. Moreover, neither the SRC nor the State moved to intervene as parties.
Accordingly, we conclude that the courts below correctly declared the constitutional validity of the statutes before us. It was error, however, to adjudge that the complaint did not state a cause of action for the relief demanded in this declaratory judgment action. In that respect, the order appealed from should be modified, without costs, and, as so modified, affirmed.

 We do not intend to indicate that the comptroller could not be compelled to transfer these funds, which he is directed to do by section 2540 of the Public Authorities Law.