Nathaniel T. Helman, J.
Motions numbered 223, 287 and 299 of the calendar of October 10, 1975 are consolidated for disposition.
The Attorney-General has moved to dismiss the complaint in this proceeding on the ground that it fails to state a cause of action, or, in the alternative, for summary judgment pursuant to CPLR 3212, declaring that the Laws of 1975 (ch 868, §§22, 23, as amd by L 1975, ch 870) are constitutional and valid.
It is the theory of plaintiff’s complaint that sections 22 and 23 of the Omnibus Bill adopted at the Extraordinary Session of the Legislature convened on September 4, 1975, violated section 8 of article VII of the Constitution, which provides that the credit of the State shall not "be given or loaned to or in aid of any individual, or public or private corporation”.
The challenged legislation consists of two bills in identical language, one referring to an appropriation of 250 million dollars (§ 22) and the other to 500 million dollars (§ 23) such sums to be appropriated (§ 22) "in the fírst instance from the local assistance fund as an advance to the city of New York, for its city purposes”. (Emphasis added.) It is to be noted that nothing in these enactments requires the State to borrow moneys in order to meet the specified appropriations.
It is the contention of the plaintiff that the Emergency Act of 1975 violates the provisions of section 8 of article VII of the State Constitution which provides in pertinent part as follows: *455 "The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking”. (Emphasis added.)
A clear distinction is made in the quoted section between gifts or loans of "money” to a public corporation, which are authorized, and gifts or loans of "credit” which are prohibited. The local assistance fund is a budget fund by which the State distributes moneys, to various governmental agencies as well as to municipalities. It is conceivable that the funds needed for distribution will be derived from taxes and other revenues, and sums withdrawn from this fund for distribution fall exclusively within the classification of "money” as that term is referred to in section 8 of article VII of the Constitution. It must be emphasized that nothing in sections 22 and 23 made provision for the source of the funds to be used to effectuate the purposes of the legislation, and no suggestion was made that the State use its credit in order to perform its obligation to make appropriations out of the capital local assistance fund.
A.
In September of 1975 the State entered into a program of short-term borrowing which included the amount of $250 million used to pay a portion of the appropriation provided for in section 23 of the Emergency Act. Similar procedures will be involved in carrying out the requirements of section 22. It is the plaintiff’s contention that these short-term borrowings violate section 8 of article VII of the Constitution. In order to meet its temporary cash needs the State has traditionally borrowed against revenues and expected tax collections, particularly during the early part of the fiscal year. These borrowings are always based on the assurance that revenues from fixed sources will be forthcoming, and the practice is constitutionally approved. Section 9 of article VII of the Constitution provides: "The state may contract debts in anticipation of the receipt of taxes and revenues, direct or indirect, for the purposes and within the amounts of appropriations theretofore made. Notes or other obligations for the moneys so borrowed shall * * * be paid from such taxes and revenues within one year from the date of issue.” (Emphasis added.)
Section 55 of the State Finance Law adds to the quoted *456 language "and so much of such taxes and revenues as will be sufficient to pay the amount borrowed are pledged to that object”. In further demonstration of the distinction to be drawn between short-term and long-term borrowing section 11 of article VII requires referendum where the State is to contract debts, excepting, however, short-term borrowing as described in section 9. Similar provision is made in section 16 for such an exception and in article VIII (§ 5, subd A) a temporary debt is excluded in determining a local government’s debt-incurring power. The use of short-term borrowing against revenues to obtain funds for transfer to New York City under sections 22 and 23 therefore involved a gift or loan of money and not of the credit of the State. To hold otherwise would endanger all of the State’s short-term borrowing, notwithstanding the specific authorizations of section 9 of article VII. Moneys received by the local assistance fund from these short-term borrowings, when used for appropriations for State services or in carrying out programs such as those specified in sections 22 and 23, clearly are an appropriation of "money” and not a gift or loan of the State’s credit. The funds are not earmarked or identified and the proceeds are distributable for the general purposes of the fund.
B.
The prohibition against a gift or loan to a public corporation first appeared in the New York State Constitution in 1938. The reports of the Convention indicate that concern was expressed as to the nature of guarantees that had been previously employed, particularly where "Authorities” were concerned. As the chairman of the legislative committee in his criticism of State guarantees put it: "they are relying on the proposition that if the revenues of the enterprise are not sufficient to meet the interest and amortization, they can always go to the Legislature and ask for an Enabling Act and get the Legislature to say in effect that the full faith and credit of the State is in back of it”.
It is apparent that the prohibition in section 8 of article VII of a loan of "credit” was concerned with the assumption of a secondary liability for the obligations of another public corporation. Here, the State has not undertaken to guarantee obligations of the municipality. Two transactions are involved:
(a) the first instance appropriation of money by the State to the city; (b) a short-term borrowing by the State which at best *457 subjects the State to liability to its own lenders, so that no loan of credit is extended to the municipality.
The subject matter of a loan of credit has been considered in several litigations both in New York and elsewhere, and the range of decisional law on this subject supports the conclusion that the transactions here involved did not violate the proscriptions of the constitutional provisions. An interesting analysis of the subject is contained in the case of Grout v Kendall (195 Iowa 467). There, the court said (pp 472-473): "What is meant herein by a loan of credit? * * * This particular section of our Constitution was taken bodily from the Constitution of New York * * * The corporate body in each case was the primary debtor; the state became the underwriter; it loaned its credit always with the assurance and belief that the primary debtor would pay * * * The ultimate cry of the surety is: I would not have become surety if I had known or believed that I should have to pay the debt. This is as true of states as of individuals. It was to remove this delusion of suretyship, with its snare of temptation, that this section of the Constitution was adopted. It withheld from the constituted authorities of the state all power or function of suretyship. ” (Emphasis added.)
In Union Free School Dist. No. 3 v Town of Rye (280 NY 469), the statute required the town to pay over tax collections to a school district with a proviso that if the taxes so collected did not meet assessments the town could borrow the difference. The Court of Appeals was asked to review the contention of the town that the requirement that it borrow under those circumstances violated the "no loan of credit” prohibition. The court held that this was a statutory obligation of the town itself, and the performance of that obligation in the manner specified did not involve a gift or loan of the credit of the town in aid to the school district. (See, also, County of Oneida v City of Utica, 285 NY 788; Salzman v Impellitteri, 203 Misc 486, affd 281 App Div 1023, affd 305 NY 414; Comereski v City of Elmira, 308 NY 248; Wein v City of New York, 47 AD2d 367, affd 36 NY2d 610.)
Since our present statute places an obligation on the State to pay these funds out of the local assistance fund without either requiring or suggesting a borrowing for that purpose the determination in the Town of Rye case would seem to be fully applicable. .
People v Westchester County Nat. Bank (231 NY 465), *458 relied on strongly by the plaintiff, is readily distinguishable. The court there held that no public purpose was served, nor was any obligation imposed upon the State in the payment of World War I veterans’ bonuses. The court therefore concluded that the State could not borrow to make a gift to private individuals. While some of the language of that opinion lends some support to plaintiff’s interpretation of the meaning of a "loan of credit”, subsequent decisions of our highest court during the half century that has passed since that case appear to indicate that under present conditions thé court would accept the views of the dissenting Judges in that case.
C.
While the court has encountered little difficulty in reaching the conclusion that the Emergency Legislation of 1975 did not involve a gift or a loan of the credit of the State, the court is concerned with another aspect of the legislation which has been thoroughly examined by the Attorney-General and has received the support of the amici curiae counsel who appeared. In his message to the Legislature, the Governor urged that the State is facing a grave risk to its own fiscal soundness if it does not act to shore up the finances of the city. The Legislature expressly articulated in the act facts which it regarded as establishing a situation of financial emergency both in the city and the State. Default "would effectively force the city to stop operating as a viable governmental entity and create a clear and present danger to the health, safety and welfare of its inhabitants” (L 1975, ch 868, § 1).
The Legislature in its findings went on to say:
"It is a matter of substantial and imperative state concern that the city not fail to meet its obligations and thereby suffer the above consequences. Such a failure could require the state to provide costly financial assistance to the city to ameliorate the emergency conditions that would result * * * If the city were unable, because of the lack of funds, to function in its normal manner, the economy of the state would, therefore, be drastically harmed * * *
"This situation is a disaster and creates a state of emergency. [This legislation is enacted] [t]o end this disaster, to bring the emergency under control and to respond to the overriding state concern”. (Emphasis added.)
It is argued by the respondents that there cannot be an *459 unconstitutional gift or loan of the credit of the State when it borrows for its own purposes, and that these laws were passed primarily for State purposes. It seems to me that the courts must undertake a flexible approach to problems of this kind in construing the "gift or loan of credit” provisions. The amelioration of a State financial crisis arising from the city’s financial difficulties is a proper State purpose which justifies the State in borrowing money to meet what the Legislature regards as a State emergency. It is axiomatic that a legislative enactment carries a strong presumption of constitutionality, particularly when the Legislature has made findings of facts necessary to support the statute (East New York Sav. Bank v Hahn, 293 NY 622; People v Broadie, 45 AD2d 649).
The Emergency Act of 1975 can be reasonably interpreted as one designed to accomplish the general purposes of the State of New York. Our courts in recent years have consistently shown a liberality when faced with constitutional challenges to financing mechanisms for proper purposes (Union Free School Dist. No. 3 v Town of Rye, supra; Salzman v Impellitteri, supra). In Wein v City of New York (36 NY2d 610, 619-620) the court said: "We should not strain ourselves to find illegality in such programs. The problems of a modern city can never be solved unless arrangements like these (used in other States, too, see State ex rel. Bibb v Chambers, 138 W Va 701) are upheld, unless they are patently illegal. * * * Since the city cannot itself meet the requirements of the situation, the only alternative is for the State, in the exercise of its police power, to provide a method of constructing the improvements and of financing their cost.” Moneys expended by the State to meet the emergency situations involving the welfare of its citizens do not constitute a dissipation of the State’s credit; rather, these moneys are applied essentially for the State’s own purposes.
The court will find that the provisions of the Laws of 1975 (ch 868, §§ 22, 23, as amd by L 1975, ch 870) are constitutional and valid.
The motion of the Attorney-General will be granted in accordance with the foregoing. The balance of relief requested in the separate motion by the Attorney-General will be deemed moot in view of the court’s determination on the merits. The application of amici curiae counsel to file briefs will be granted.