*646
 

 Per Curiam.
 

 These cases present a very narrow issue. That issue is whether the State’s "diversion” of the proceeds of the New York City sales tax and the tax on stock transfers from the general revenues of New York City to the Municipal Assistance Corporation unconstitutionally impairs the rights of city bondholders. Plaintiffs, holders of New York City long-term bonds, seek declaratory judgments that the challenged diversion is unconstitutional. They appeal directly from summary judgments in favor of defendants granted by Supreme Court (see CPLR 3212; NY Const, art VI, § 3; CPLR 5601, subd [b], par 2).
 

 The summary judgments should be sustained. There is no requirement, either in the State Constitution or in any undertaking in the city bonds, that the diverted taxes be continued directly payable to the city. There is not, and never has been, an agreement, express or implied, that the revenues of these taxes be used to repay city bonds. Thus, since the challenged diversion does not impair any contractual obligations, the Federal Constitution is not violated (see US Const, art I, § 10).
 

 On June 10, 1975, by action of the State Legislature, the Municipal Assistance Corporation for the City of New York was created (L 1975, chs 168, 169; see
 
 Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y.,
 
 40 NY2d 731, 733). To provide the new entity with a financial base, the New York City sales tax was suspended, and an identical sales tax was imposed by the State, with the revenues to be committed to MAC (L 1975, ch 168, §§ 4, 7-a). This suspension of the city tax was to continue until all obligations of MAC had been repaid (L 1975, ch 168, § 4). In addition, to the extent necessary to enable MAC to meet its obligations and carry out its corporate purposes, MAC was to receive appropriations from the stock transfer tax fund (L 1975, ch 168, § 7-b). It is the diversion of these tax revenues, and no other portions of the applicable statutes, that plaintiffs challenge in this litigation.
 

 Plaintiffs’ contention is simply stated: the diversion of tax revenues from the city to MAC impairs the position of city bondholders, since fewer tax revenues will be available for repayment of principal and interest on city bonds. Therefore, the argument runs, the diversion is an impairment of contract in violation of the Federal Constitution (US Const, art I, § 10).
 

 The answer to plaintiffs’ contention is equally simply stated. In no way was the city ever committed to maintain sales tax revenues or stock transfer tax revenues for the benefit of its
 
 *647
 
 bondholders. That these taxes have been a substantial source of revenue for the city, in one instance since the 1930’s and in the other since 1965, is of no consequence. What is important is that city bondholders are protected by the State Constitution, which obligates the city to appropriate moneys for the repayment of city bonds, and to exceed normal real estate tax limitations in order to raise the necessary moneys (NY Const, art VIII, §§ 2, 10, 12). In those provisions, which reflect the municipality’s traditional source of revenue from its real estate tax levy, lies the constitutionally guaranteed protection of city bondholders.
 

 Assuredly, the State Constitution provides that unpaid bondholders for whom moneys have not been appropriated are entitled to have sufficient sums for repayment "set apart from the first revenues thereafter received and * * * applied to such purposes” (NY Const, art VIII, § 2). But this "first lien” on the city’s revenues does not give bondholders the right to insist that any particular existing taxes be maintained or new ones imposed to produce those revenues. It only assures that out of the revenues which are collected, money must be provided to satisfy obligations to the bondholders.
 

 On the other hand, with respect to the traditional real estate tax levies, the bondholders are constitutionally protected against an attempt by the State to deprive the city of those revenues to meet its obligations. Section 12 of article VIII of the State Constitution prohibits the Legislature from restricting the power of a locality "to levy taxes on real estate for the payment of interest on or principal of indebtedness theretofore contracted.” This provision, combined with the city’s pledge of faith and credit, constitutionally mandated in all municipal contracts of indebtedness, requires the city to raise real estate taxes, and without specification other revenues, if such a levy be necessary to repay indebtedness (NY Const, art VIII, §
 
 2; Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y.,
 
 40 NY2d 731, 736-737,
 
 supra).
 
 The challenged statute does not, and could not, alter this obligation. A different case would be presented if, realistically, the city were stripped of all sources of revenue, other than the real estate tax, and its outcome would be, at this time, unpredictable (cf.
 
 Mobile v Watson,
 
 116 US 289, 305).
 

 Plaintiffs’ thesis rests on an untenable contention, namely, that city bondholders were entitled to rely on continued collection of the now diverted taxes. Nowhere, however, not in
 
 *648
 
 the State Constitution and not in the bonds themselves, is there any requirement that collection of particular taxes be continued. As a consequence, there is no impairment of obligation of contract under the Federal Constitution.
 

 Accordingly, the judgments should be affirmed, without costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur in
 
 Per Curiam
 
 opinion; Judge Fuchsberg taking no part.
 

 In each case: Judgment affirmed.