OPINION OF THE COURT
Edward O. Spain, J.
Plaintiffs are citizen taxpayers and registered voters in the State of New York. This is an action which seeks a declara *171 tory judgment, pursuant to CPLR 3001, declaring unconstitutional sections 7, 10, 13, 14, 15, 16, 17, 19, 33, 34, 35, 39, 40 and 132 of chapter 56 of the Laws of 1993, for alleged violations of three specific sections of the New York State Constitution: article VII, § 11; article VII, § 8; and article X, §5.
Plaintiffs also seek a preliminary injunction. A temporary restraining order, originally part of an order to show cause dated May 24, 1993, has been since modified and continued pending the outcome of the within motions. Said temporary restraining order prohibits the defendants from issuing any bonds pursuant to the aforementioned sections of chapter 56 of the Laws of 1993 (chapter 56).
The State defendants and the New York State Thruway Authority (Thruway Authority) have cross-moved for summary judgment. The Metropolitan Transportation Authority (MTA) has cross-moved for a judgment, pursuant to CPLR 3211 (a) (7), dismissing the complaint for failure to state a cause of action, or in the alternative, pursuant to CPLR 3211 (c), for summary judgment.
Plaintiffs have also moved for summary judgment.
THE LEGISLATION
Chapters 329 and 330 of the Laws of 1991 and the statute in question, chapter 56, provide for and direct funds into a dedicated highway and bridge trust fund (Highway Trust Fund) and a dedicated mass transportation trust fund (Mass Transit Trust Fund) which are backed by revenue from monies collected State-wide including portions of the gasoline tax, the supplemental petroleum business tax, the highway use tax and certain vehicle registration fees.
Chapter 56 allocates revenues from said dedicated funds for the financing of mass transportation, bridge and highway projects. The Thruway Authority and the MTA are authorized to issue special limited obligation bonds which are payable from revenues consisting of amounts deposited in the Highway Trust Fund or the Mass Transit Trust Fund respectively and held separate and apart from all other monies of the State. No revenue in the respective trust funds can be disbursed unless an annual appropriation has been made by the State Legislature.
Chapter 56 and legislation already in effect provide that any bonds issued by the specified authorities pursuant to authori *172 zations contained within said chapter shall not constitute a debt of the State (see, e.g., L 1993, ch 56, §§ 16, 33, 34; Public Authorities Law § 1269 [8]). These bonds, because they reflect a greater risk of nonpayment to bondholders, are sometimes called "appropriation-risk” bonds.
plaintiffs’ claims
In their first cause of action, the plaintiffs challenge the mechanism in chapter 56 for backing and financing the bond plan authorized for the MTA. Their challenge is based primarily on three specific sections of the New York State Constitution (the Constitution), namely:
Article VII, § 11, which states in part: "no debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein. No such law shall take effect until it shall, at a general election, have been submitted to the people, and have received a majority of all the votes cast for and against it at such election”.
Article VII, § 8 (1), which states in part: "The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking”.
Article X, § 5, which states in part: "Neither the state nor any political subdivision thereof shall at any time be liable for the payment of any obligations issued by * * * a public corporation heretofore or hereafter created, nor may the legislature accept, authorize acceptance of or impose such liability upon the state or any political subdivision thereof’.
In the next five causes of action the plaintiffs challenge the mechanism for backing and financing the bond programs authorized in the legislation for the Thruway Authority. Their arguments are based upon the same sections of the Constitution.
In their final cause of action the plaintiffs assert that the use of State taxes and fees collected State-wide for debt service on bonds without voter approval constitutes a violation of due process under the State and Federal Constitutions.
STANDING ISSUE
The standing of the plaintiffs must first be considered. *173 Historically actions such as these were brought by plaintiffs in their capacity as citizen taxpayers. In Wein v Comptroller of State of N Y. (46 NY2d 394 [1979]), the Court of Appeals held that the exception contained in section 123-b (1) of the State Finance Law did not apply to citizen taxpayers who were challenging the constitutionality of revenue raising bond legislation. In the same decision the court also held that there is no common-law standing for a citizen taxpayer "to challenge the issuance of State bonds or bond anticipation notes” (Wein v Comptroller of State of N. Y., supra, at 399, 400; see also, New York State Coalition For Criminal Justice v Coughlin, 64 NY2d 660 [1984]).
In a recent decision, Matter of Schulz v State of New York (81 NY2d 336 [1993]), the Court of Appeals ruled that citizen voters have standing to challenge a statutory financing provision as an alleged violation of the referendum requirement set forth in article VII, § 11 of the Constitution. However, the Court left undisturbed its prior rulings that plaintiffs (other than citizen voters) have no standing to challenge a statutory bond authorization.
Therefore, insofar as the plaintiffs in the within action have challenged chapter 56 on grounds other than article VII, § 11 of the Constitution, they have no standing to do so. Accordingly, this court will deal with the merits of this action only with respect to plaintiffs’ challenge to chapter 56 as citizen voters as an alleged violation of the Constitution’s referendum requirement.
It does not appear that this court’s refusal to broaden the scope of the plaintiffs’ standing will in any way lessen the impact of plaintiffs’ main arguments.
MTA
The plaintiffs contend that section 7 of chapter 56 is unconstitutional because it allows the revenues in the Mass Transit Trust Fund (the source of which includes the proceeds of State taxes and fees imposed and collected State-wide) to secure and be applied to the payment of its bonds and notes issued to fund MTA projects including debt service and principal and interest on debt instruments.
The State defendants and the MTA have responded by asserting that the use of State subsidies paid from the State’s general fund to a public authority to secure its bonds does not *174 constitute a debt within the meaning of the Constitution so long as such payments are subject to annual appropriation by the Legislature. The MTA further argues that the State’s contribution to the fund used by it to secure and service the debts on its bonds remains as it has always been — a gift from the State Legislature, which said body retains the right from year to year to modify, reduce or eliminate this allocation altogether.
THRUWAY AUTHORITY
The plaintiffs claim that the remainder of the challenged sections of chapter 56, which apply to the Thruway Authority, violate the same debt limitations of the Constitution alleged to have been violated by chapter 56 with respect to the MTA. The remaining "illegal” provisions of chapter 56 provide for, among other things: (a) allowing the Thruway Authority to issue long-term bonds and notes secured by debt service contracts which commit the State to apply revenues deposited in the Highway Trust Fund (the source of which includes the proceeds of State taxes and fees imposed and collected Statewide); (b) title to highways and bridges throughout the State will be conveyed to the Thruway Authority and then leased back to the State with lease payments to be paid out of the Highway Trust Fund; (c) the Thruway Authority is authorized to issue 30-year bonds, the proceeds of which will be used to rebuild the highways and bridges in all parts of the State; and (d) initially appropriating $14.5 million of revenue deposited in the Highway Trust Fund to the State’s general debt service fund for payment of principal and interest on bonds issued by the Thruway Authority.
The State defendants and the Thruway Authority have responded by stating that the net proceeds of the Thruway Authority bonds will be used to finance badly needed capital infrastructure improvements throughout the State in return for which the State will pay the Thruway Authority amounts equal to its administrative expenses and debt service but only if the Legislature annually appropriates such amounts.
The main thrust of the defendants’ argument is that chapter 56 expressly states that the Thruway bonds will not be a debt of the State, that the State will not be liable to the bondholders and that the bonds must so indicate. The defendants further assert that chapter 56 mandates that the agreements between the State and the Thruway Authority are *175 executory only to the extent that the Legislature appropriates money each year for the payments.
CONSTITUTIONAL ISSUES
The defendants rely heavily on Wein v City of New York (36 NY2d 610 [1975]) (Wein I) in support of their argument that chapter 56 does not violate the Constitution. In Wein I, plaintiffs sought to declare invalid the legislation creating the New York City Stabilization Reserve Corporation (SRC). Plaintiffs in that action claimed that this legislation violated the limitations on the incurrence of municipal debt contained in article VIII of the Constitution. The Legislature established the SRC during New York City’s fiscal crisis in order to provide funds for the City by the issuance of SRC bonds. The proceeds of SRC bonds were to be deposited in the City’s general fund and used to pay for essential services of the City.
The SRC’s bonds were to be secured by payments required to be made by the City and from the City’s portion of the stock transfer tax and per capita and other State subsidies. The legislation provided that "there shall be paid by the city to the corporation” the amounts necessary to cover debt service (Wein v City of New York, supra, at 615). This requirement was subject to the condition that the City first appropriate such amounts. The payment of State subsidies committed to SRC bonds was also subject to appropriation by the State Legislature. The legislation provided that the bonds of SRC would not be a debt of the State or the City.
The Court of Appeals, relying on its decision in Comereski v City of Elmira (308 NY 248 [1955]), agreed with the defendants and held, in what plaintiffs describe as a split decision (4-3), that the SRC bonding mechanism did not violate the Constitution.
Plaintiffs, in the within action, urge this court to distinguish the facts in Wein I (supra) from the facts in this case and to follow the reasoning of the dissent in Wein I.
Wein I (supra) is markedly similar to this case. Here, as there, the legislation authorized a public benefit corporation to issue bonds. Here, the law expressly provides that any obligations issued pursuant to the authorization shall not be debt of the State, and that the State cannot be legally liable for them; there, the law provided that neither the State nor the City could be legally liable. Here, as there, the bonds are payable out of, and the bondholders of the public corporation are *176 entitled to look only to, funds appropriated to and received by the public corporation for that purpose. Here, as there, the State has provided for a special fund to make payments to the public authority, and here, as there, the State is under no obligation to appropriate the funds. Here, the State is "not bound,” just as there the City was "not bound.” Here, as there, the "very terms of the statute clearly preclude such indebtedness” (Wein v City of New York, supra, at 617).
After a careful review of the legislation in question it is clear that chapter 56 was tailored carefully so as to adhere to the principles set forth in Wein I (supra) and its progeny. In Quirk v Municipal Assistance Corp. (41 NY2d 644 [1977]) and in Wein v State of New York (39 NY2d 136 [1976]), the Court upheld basically the same statutory funding mechanisms as existed in Wein I in which the State assumed certain indemnification obligations subject to annual appropriation (see also, Wein v Levitt, 42 NY2d 300 [1977]). Such financing mechanisms, like those in chapter 56 as well as in other State statutes enacted in accord with the principles of Wein I, provide for long-term obligations for funding capital improvements, require that the obligations specify that they shall not be the debt of the State (or the local government) and that the obligations are payable solely out of annual appropriations that the State (or the local entity) is under no duty to make. Such a formula does not appear to violate constitutional debt limitations. As stated in Wein I, "the statutory scheme stays within the letter of the Constitution” (Wein v City of New York, supra, at 619).
Plaintiffs consider chapter 56 to be yet another example of the State’s fiscal irresponsibility which will further undermine the State’s economy. The defendants consider chapter 56 to be a creative way of dealing with the serious fiscal problems related to the upkeep and improvement of the State’s highway, bridge and mass transportation systems which are essential to the State’s economy and to its people.
"Courts are required to exercise a large measure of restraint when considering highly intricate and imaginative schemes for public financing or for public expenditures designed to be in the public interest. Some may be highly controversial. But when a court reviews such a decision, it must operate on the rule that it may not substitute its judgment for that of the body which made the decision. Judges, however much they might disagree with the wisdom of the act under review, are not free to invalidate it on that *177 ground” (Hotel Dorset Co. v Trust For Cultural Resources, 46 NY2d 358, 369-370 [1978]).
Plaintiffs have a heavy burden in this court in challenging the constitutionality of chapter 56. "No statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law” (People ex rel. Simpson v Wells, 181 NY 252, 257 [1905]). " 'Legislative enactments are presumed to be constitutional * * * While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt’ ” (Maresca v Cuomo, 64 NY2d 242, 250 [1984]). Plaintiffs have failed to meet their burden.
The doctrine of stare decisis requires that this court follow the precedent established in Wein I (supra). The challenged funding mechanisms contained within chapter 56 are constitutionally permissible.
DUE PROCESS ISSUE
Plaintiffs allege that chapter 56 authorizes a "taking” of their property without due process. They assert, in their seventh claim, that funds "otherwise available to reduce plaintiffs’ taxes will be unconstitutionally taken from plaintiffs and illegally used to pay the principal and interest on the debt incurred by various state authorities”. It is clear that the Legislature has the authority to appropriate funds to a public corporation for a public purpose. (See, Wein v State of New York, supra, at 140.) The courts in this State have also held that the Legislature has the authority to dedicate the proceeds of particular taxes to the use of a public corporation. (See, Quirk v Municipal Assistance Corp., supra, at 647-648.) Accordingly, plaintiffs’ due process argument must fail.
LACHES ISSUE
Some of the defendants have raised the doctrine of laches. Plaintiffs’ third cause of action (third claim) challenges those parts of chapter 56 (§§ 13, 14, 15) which authorize additional bonding for local highway and bridge improvement programs (CHIPS and Marchiselli programs) which originally became funded through Thruway Authority bonding in 1991 (L 1991, ch 329, § 12). The new bonds authorized by chapter 56 have not yet been issued.
In reliance on these programs localities have expended *178 funds and committed themselves to programs with the expectation that they will be reimbursed.
The defendants submit that there is no legitimate reason why the new approach to funding those programs could not have been challenged in 1991. In Matter of Schulz v State of New York (81 NY2d 336, supra), the Court of Appeals dealt with a similar issue. In that case bonding had been authorized at least a year before the constitutional challenge was commenced. There the Court held that laches barred the lawsuit even though some of the bonds had not, as yet, been issued. "The State defendants’ arguments persuade us that the time periods involved here do not meet the threshold test in light of the great prejudice certain to be inflicted on the State and its citizens at large when financial transactions of such magnitude and destabilizing impact are at stake and may be upset. Time must be of the essence and here appellants, for all their good-faith intentions in acting expeditiously as pro se litigants, did not satisfy that essential ingredient” (Matter of Schulz v State of New York, supra, at 349-350).
The local highway and bridge programs became funded through Thruway Authority bonding in 1991. Plaintiffs’ failure to challenge the 1991 funding mechanisms in those programs until May of 1993 bars them from raising these issues in their third claim.
CONCLUSION
In view of the foregoing, there being no triable issues of fact, plaintiffs’ motion for summary judgment is denied. Defendants’ motions for summary judgment are, for all of the foregoing reasons, granted.
Sections 7, 10, 13, 14, 15, 16, 17, 19, 33, 34, 35, 39, 40 and 132 of chapter 56 of the Laws of 1993 are, in all respects, constitutional. Plaintiffs’ complaint is, in all respects, dismissed.
Accordingly, the temporary restraining order dated May 24, 1993 as modified and extended on June 9, 1993 is, in all respects, vacated forthwith.